**David GRIDER and Leon Gladecki, Plaintiffs–Appellants,**

v.

**Lauro CAVAZOS, Secretary of the United States Department of Education, Defendant–Appellee.**

**No. 90–8166**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1990.

Fred Fuchs, Legal Aid Soc. of Cent. Texas, Austin, Tex., for plaintiffs-appellants.

Janet E. Bauerle, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., Barbara C. Biddle, U.S. Dept. of Justice, Civil Div., Jennifer H. Zacks, Washington, D.C., for defendant-appellee.

Before GEE, SMITH and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Appellants, David Grider ("Grider") and Leon Gladecki ("Gladecki") appeal the district court's grant of summary judgment in favor of Lauro Cavazos, in his capacity as Secretary of the United States Department of Education ("Secretary"), dismissing Grider's and Gladecki's declaratory judgment action that sought to recover tax refunds intercepted by the Internal Revenue Service ("IRS").[1] Grider's and Gladecki's overpayments of income taxes had been offset in partial satisfaction of their defaulted student loans. Also appealed is the

district court's grant of summary judgment in favor of the Secretary on his counterclaim against Gladecki for the unpaid balance of his student loan.

## I.

The parties stipulated to the following undisputed facts:

1. On January 9, 1974, Grider executed a promissory note to Sinclair Community College under the National Direct Student Loan ("NDSL") Program to attend said institution. In the note, Grider promised to pay the lending institution the sum of such amounts as were advanced to him and endorsed in the schedule of advances, together with all attorneys' fees and other costs and charges necessary for the collection of any amount not paid when due.

2. Grider received the following four advances: $300.00 on January 9, 1974; $69.50 on March 25, 1974; $160.50 on March 25, 1974; and $70.00 on May 1, 1974. The amount of the advances totaled $600.00.

3. Grider defaulted on the promissory note on October 1, 1975.

4. On July 20, 1979, Grider's defaulted note was assigned by Sinclair Community College to The Department of Education (the "Department").

5. From July 11, 1968, through May 20, 1969 Gladecki executed promissory notes to Yale University under the NDSL Program to attend said institution. In the notes, Gladecki promised to pay the lending institution a sum of such amounts as were advanced to him and endorsed in the schedule of advances, together with interest and all costs of collection, including reasonable attorneys' fees.

6. Gladecki received the following advances: $300.00 on July 11, 1968; $200.00 on January 9, 1969; $400.00 on May 22, 1969; and $625.00 on August 13, 1969. Gladecki received advances totaling $1,525.00.

---

**1.** In accordance with Court policy, this opinion, being one which initiates a conflict with the rule declared in another circuit, was circulated before release to the entire Court, and rehearing en banc was not voted by a majority of the judges in active service.

7. Gladecki defaulted on the promissory notes on April 2, 1971.

8. On May 31, 1979, Gladecki's defaulted note was assigned by Yale University to the Department.

9. The IRS offset Grider's tax refund in the amount of $805.35 for taxable year 1986, which was credited by the Department to Grider's student loan account on or about March 9, 1987.

10. The outstanding balance owed by Grider as of October 30, 1989, was $4.69. The outstanding balance includes principal in the amount of $3.24, interest in the amount of $0.30, and a collection fee of $1.15.

11. The IRS offset Gladecki's tax refund in the amount of $317.25 for taxable year 1986, which was credited by the Department to Gladecki's student loan account on or about March 4, 1988.

12. The outstanding balance owed by Gladecki as of October 30, 1989, was $1,536.59. The outstanding balance includes principal in the amount of $1,215.00, interest in the amount of $316.34, and a collection fee of $5.25.

13. At the time of the offsets cited above the Secretary had not sued and obtained judgments against Grider or Gladecki for the amounts of their defaulted loans.

## II.

Grider and Gladecki filed suit in state court in Texas, challenging the intercept of their income tax refunds for 1986. The Secretary removed the case to the district court, and subsequently filed an answer as well as a counterclaim against Gladecki for the remaining balance on his defaulted student loans. Gladecki answered the counterclaim, asserting that it was barred by the statute of limitations and, alternatively, that the Secretary's recovery could not exceed Gladecki's recovery. After the parties stipulated the facts set forth above, each filed motions for summary judgment (the Secretary did not actually file a motion for summary judgment but filed a memorandum in support of his cross motion for summary judgment).

On December 7, 1989, the district court signed a final judgment denying Grider's and Gladecki's summary judgment, granting the Secretary's cross-motion for summary judgment, thereby entitling the Secretary to retain the offsets to Grider's and Gladecki's tax refunds, and granting the Secretary's counterclaim against Gladecki for all sums remaining unpaid under his student loans. Grider and Gladecki filed timely notices of appeal.

## III.

This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.* 742 F.2d 862, 873 (5th Cir.1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

The creditor on a delinquent student loan may assign it to the Secretary. The Secretary may file suit for a money judgment against the borrower at any time during the first six years following the date on which the student loan is assigned, transferred or referred to the Secretary. 20 U.S.C. § 1091a(a)(4)(C). In the instant case

no such suit was filed within six years following the assignment of either the Grider or the Gladecki loans.

A Federal agency that is owed a "past-due legally enforceable debt" may refer the debt to the IRS for tax intercept. 31 U.S.C. § 3720A(a), (d); 26 U.S.C. § 6402(d). Neither of the cited statutes defines "legally enforceable debt." Because the Grider and Gladecki debts had been assigned more than six years earlier and thus were not legally enforceable by lawsuit, the Secretary could only prevail in this case if the debts in question were "legally enforceable" by some means other than a lawsuit for a money judgment, and then only if such other means were employed before they became time barred.

The statute authorizing offset by tax intercept directed the Secretary of the Treasury to issue regulations prescribing the time or times at which agencies must submit notices of past due legally enforceable debts, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. 31 U.S.C. § 3720A(d). Accordingly, a Treasury Regulation, 26 C.F.R. § 301.6402–6(T)(b)(2) (the "Regulation"), was enacted. Among other things it defined "past-due legally enforceable debt" and established a ten-year period of limitation. In pertinent part, the Regulation states:

> (b) *Past-due legally enforceable debt eligible for refund offset.* For purposes of this section, a past-due legally enforceable debt which may be referred by a Federal agency to the Service for offset is a debt—
>
> .    .    .    .    .
>
> (2) Which, except in the case of a judgment debt, has been delinquent for at least three months but has not been delinquent for more than ten years at the time the offset is made; (emphasis in original).

■ The courts have recognized correctly that, for purposes of the IRS offset collection procedure, the fact that a suit for a money judgment on an unpaid education loan may be time barred by the six-year statute of limitations does not prevent it from being a "past-due legally enforceable debt." *See Thomas v. Bennett,* 856 F.2d 1165 (8th Cir.1988); *Hurst v. U.S. Dept. of Educ.,* 695 F.Supp. 1137 (D.Kan.1988), *aff'd,* 901 F.2d 836 (10th Cir.1990). To the contrary, such a debt continues to meet the definition, and thus be eligible for offset collection through intercept, for a period of ten years following the date upon which it became "delinquent."

All parties to the instant case concede that the six-year statute of limitations has long since barred the Secretary from filing suits for money judgments against Grider and Gladecki. Their debts, then, could only be classified as "past-due legally enforceable" for purposes of tax intercept if they had not been *delinquent* for more than ten years prior to the time the IRS executed the intercept.

■ As stipulated, both loans had been assigned to the Secretary more than eight years prior to the tax intercept. Moreover, Gladecki's loans had been delinquent for more than fifteen years, and Grider's loan had been delinquent for more than eleven years. How, then, could the district court reject Grider's and Gladecki's motion for summary judgment and sustain the validity of the intercept of their tax overpayments? The answer to that question lies in the interpretation of *delinquent* as used in the Regulation.

The Regulation itself contains no definition of *delinquent.* The Secretary argued, and the district court agreed, that the ten-year limitation period of the Regulation does not begin to run when the debt first becomes delinquent in the dictionary or legal sense of that word, but only when the debt (which by definition must already be delinquent in the hands of the original creditors) is assigned to the Secretary.

Without ever adverting to the clear meaning of *delinquent* in ordinary lay and legal parlance, the district court relied on *Roberts v. Bennett,* 709 F.Supp. 222 (N.D.

Ga.1989), and *Hurst*[2] to infer that, for purposes of the Regulation, the debt did not become delinquent until it was acquired by the Secretary. If the district court had not written its opinion for another few weeks, it also could have cited *Jones v. Cavazos*, 889 F.2d 1043 (11th Cir.1989), rendered on December 6, 1989, one day before the district court signed its final judgment in this case. *Jones* is the most recent case on point and the only appellate decision squarely on "all fours" with this case.

Like the district court in this case, the Eleventh Circuit in *Jones* grounded its opinion on the decisions in *Roberts* and *Hurst*. With all due respect to the able judges who penned the *Jones* opinion, we find it fatally flawed both in statutory (and regulatory) construction and in reliance on prior cases that, upon close analysis, simply do not support the propositions for which they are cited.

The courts in *Jones*, *Roberts* and *Hurst* had to determine the meaning of *delinquent* as used in the regulation that established the intercept offset procedure mandated by Congress. In each of those three cases, as in this one, the government was the assignee of student loans that could not be collected by suits for money judgments because the six-year statute of limitations had elapsed. And, as in this case, the IRS intercepts in *Jones*, *Roberts* and *Hurst* occurred more than ten years after the student loans had become delinquent in the hands of the original lending institutions, but less than ten years after assignment of those delinquent loans to the Department of Education.

Our holding today and the reasoning behind it are in direct and unavoidable conflict with our brothers on the Eleventh Circuit. Regrettably we can neither accept their conclusory statement about the meaning of *delinquent* in the Regulation nor their reading of the cases with which they sought to construct a foundation for their opinion in *Jones*. Although statutory interpretation and prior jurisprudence are intertwined in this instance, we shall endeavor to examine each separately to the extent feasible.

## STATUTORY CONSTRUCTION

Starting with the subject Regulation, we see that both "past-due legally enforceable debt" and the limitation period for instituting an offset intercept are defined in the same phrase, "... has not been delinquent for more than ten years at the time the offset is made." 26 C.F.R. § 301.6402–6(T)(b)(2). By any rules of statutory construction, courts are forbidden to tamper with the plain meaning of the words employed unless they are clearly ambiguous or nonsensical. The concomitant rule of interpretation is that courts may not re-write inartfully but unambiguously drafted legislation in order to accomplish results perceived by the court to be the goals of such flawed legislation.

The *Jones* court, like those it cited, failed to consider (or at least did not mention) the significant fact that it was not only student loans but many other types of debts owed to the government that Congress was addressing when it authorized tax offset by intercept and delegated to the Secretary of the Treasury the duty of drafting and implementing regulations for that purpose. It is axiomatic that in the case of many of such other types of debts the government is the original creditor, not a subsequent assignee. Those debts are significantly different from educational loans which are generated in the private sector and do not come into the hands of the government until and unless they are delinquent. Had the drafters of the Regulation adverted to that "fact of life" for debts resulting from assigned student loans, they may (but would not necessarily) have provided for the ten-year offset period to run from date of assignment rather than date of delinquency; or they may (but would not neces-

---

**2.** In *Hurst* the Department of Education appealed the district court judgment only to the extent of the question of counter claim. *See* 901 F.2d 836 (10th Cir.1990). The district court's holding that the debt did not become *delinquent* until it

was assigned, and thus the ten-year period under the IRS Regulation did not begin to run until that time, was not appealed and thus not considered by the Court of Appeals for the Tenth Circuit.

sarily) have made special provisions for loans assigned to the government after they have become delinquent in the hands of the assigning creditor. It suffices, however, that the drafters of the Regulation did not do so.

Neither is it nonsensical for the ten year limitation period specified in the Regulation to run from delinquency even though the six year statute of limitations for money judgment suits runs from assignment. The two systems operate independently of each other, giving the government two bites at the apple. On the one hand the Secretary has six years after acquiring the debt by assignment within which to file suit against the delinquent borrower (plus ten additional years to collect such a judgment by tax offset because the time bar of ten years from *delinquency* is made expressly inapplicable to a *judgment* debt). On the other hand, the Secretary may opt to collect student loans extrajudicially through tax offset, thereby avoiding the time, effort and expense of a lawsuit. The offset method can be employed during as much of the ten year period following delinquency as may remain after assignment, irrespective of whether that is before or after the lapse of the six-year statute of limitations for filing a lawsuit.

The highest form of judicial restraint is resistance of the temptation to cure inartfully drafted legislation by indulging in "judicial legislation." Absent ambiguity, we must not tinker. And try as we might, we fail to see how the Regulation could be viewed as ambiguous. *Delinquent* is a word the meaning of which is universally understood by lawyer and layman alike when used in reference to a debt. In fact, the opinions in *Jones* and in each other case which has considered the matter contain statements of fact that set forth the exact dates upon which the student loans in question became "delinquent" in the hands of the original lenders. In the face of such unambiguous language, how can a court justify usurping the legislative function that was delegated to the Secretary of the

Treasury by supplying words such as "in the hands of the Secretary" to modify "delinquent"?

So much for statutory construction. We now examine the jurisprudence cited for support by the Eleventh Circuit in *Jones*, and by the district court in this case. *Jones* leans heavily on *Roberts v. Bennett*, 709 F.Supp. 222 (N.D.Ga.1989). As in the case before us, the *Roberts* court dealt with a student loan intercepted by the IRS more than six years after the debt had been assigned to the government and more than ten years after it had become delinquent in the hands of the original lender. The opinion in *Jones* states that the *Roberts* court looked to the language and legislative history of section 3720A. Such an examination has no bearing on the meaning of *delinquent* in the Regulation because courts do not properly resort to an examination of legislative history or intent if the legislation itself is unambiguous. *Jones* notes that the *Roberts* court "responded that 'the debt cannot become *delinquent* until it is in the hands of the agency requesting the offset.'" But that conclusory statement is totally without statutory or jurisprudential support. It is woefully insufficient to overcome the plain meaning of *delinquent.*

The sandy jurisprudential foundation[3] upon which the opinion in *Jones* is built, beginning shakily with reliance on *Roberts*, continues to erode with the citation to *Thomas v. Bennett*, 856 F.2d 1165 (8th Cir.1988) and *Gerrard v. United States Office of Educ.*, 656 F.Supp. 570 (N.D.Cal. 1987). Neither of those cases provides support for *Jones* because both dealt with IRS offsets that occurred *less* than ten years after the student loans became delinquent in the hands of the original lenders. *Thomas* and *Gerrard* stand for nothing more than the truism that the ten-year offset procedure remains available to the Secretary, even though the six-year statute of limitations for filing suits for money judgments may have expired, because that

---

**3.** "... a foolish man, which built his house upon the sand: And ... it fell: and great was the fall of it." Matthew 7:26–27.

debt is still "legally enforceable" under the Regulation.

Even more telling is the Eighth Circuit's footnote 4. in *Thomas*, 856 F.2d at 1169, which can only be read as support for our opinion today:

> 4. We note that the Secretary of the Treasury has promulgated a Regulation which, as a matter of policy, states that the offset procedure will not be used to satisfy an obligation which has been delinquent for more than ten years at the time the offset is made. [citation omitted] This does, we think prudently, place limits upon the use of the offset procedure for *obligations older than ten years.* (emphasis added)

The illusory jurisprudential foundation of *Jones* is still further eroded by its attempt to convert dictum to holding in its citation of *Hurst.* Granted, the district court in *Hurst* took a gratuitous, *obiter dictum* swipe at the Treasury Regulation and the meaning of "delinquent" therein.[4] Nevertheless, the actual holding of *Hurst* was that the IRS intercept method of collection was available to the Department of Education because the offset was made within six years following assignment of the Hurst loan. Consequently, the debt was still "legally enforceable" through litigation and did not depend on the ten-year definition of enforceability in the Regulation for such standing.

The final case cited for support in *Jones* is equally unsupportive. *United States v. Hunter*, 700 F.Supp. 26 (M.D.Fla.1988) merely confirms the proposition, never questioned in this case, that the Congressionally established limitations period of six years following assignment of student loans to the government supersedes state statutes of limitations that might have been applicable to the loan in the hands of the original, non-governmental lender.

## CONCLUSION

This case illustrates the danger posed by a line of jurisprudence which, like Topsy, "just grew" as the result of stacking one inapposite citation upon another until, in the aggregate, they take on the appearance of valid precedent. Here the district court grounded its opinion in the same apparently reliable but actually flawed jurisprudence as did the *Jones* court in reaching the insupportable conclusion that, for purposes of the Regulation implementing tax offset, the period of delinquency begins to run from the date the loan is assigned to the government and not from the date the loan became delinquent in the universally understood meaning of that word. In disagreeing with the district court in this case we are reluctantly disagreeing with our brothers of the Eleventh Circuit and their opinion in *Jones*. We thereby regrettably but unavoidably create a conflict between our two circuits. Just as we take no pleasure in that, we also take no pleasure in giving aid and comfort to those former students who shirk their loan repayment obligations by hiding behind statutes of limitation. We can only ask in rhetorical wonderment why the Secretary continues Quixotically to pursue judicial construction of the Regulation instead of simply asking his counterpart in the Department of the Treasury to close the loophole in the Regulation with a proverbial stroke of his pen.

Be that as it may, we discern no ambiguity whatsoever in the language of 26 C.F.R. § 301.6402–6T(b)(2) (1988) as promulgated by the Secretary of the Treasury in response to the Congressional mandates of 31 U.S.C. § 3720A. and 26 U.S.C. § 6402(d). We hold that an assigned student loan debt which is time barred for collection by lawsuit cannot be collected by tax refund off-

---

4. "The court is not convinced that the language of the regulations should be interpreted so restrictively. The government did not receive the right to collect on the debt until 1981. It could then be reasonably argued that the debt did not become 'delinquent' for purposes of offset requirements until the government obtained that right in 1981. In the case of a private debt later assigned to the government, then, the regulation is ambiguous and of little help." *Hurst*, 695 F.Supp. at 1139. Try as we may, we cannot agree with that flawed syllogism. The flaw resulted from the *Hurst* court's intentional or inadvertent conversion of the Regulation's *silence* to *ambiguity.* The omission of qualifying words may cause a statute or regulation to miss its intended mark without in any way causing the words actually used to be ambiguous.

set if ten years has passed since that debt became delinquent in the hands of the Secretary's assignor.

Because we reverse the district court in this case and render summary judgments against the Secretary and in favor of Grider and Gladecki on grounds that the offsets obtained by IRS intercept under the subject Treasury Regulation were time barred, the district court's grant of summary judgment in favor of the Secretary's counterclaim under 28 U.S.C. § 2415(e) must fall as well.

For the foregoing reasons, the district court's grant of the Secretary's cross-motion for summary judgment is REVERSED in all respects; the district court's denial of Grider's and Gladecki's motions for summary judgment is REVERSED and those motions are hereby GRANTED; and summary judgments are hereby RENDERED in favor of Grider and Gladecki, ordering the Secretary to make restitution to Grider in the principal amount of $805.00 plus interest and to Gladecki in the principal amount of $317.25 plus interest, and directing that the Secretary take nothing on his counter claim against Gladecki and bear all costs of these proceedings and of the proceedings in the district court.

REVERSED AND RENDERED.