**KING RANCH, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–2042.

United States Court of Appeals, Fifth Circuit.

Nov. 1, 1991.

Frank Davis, Laurence D. Sikes, Jr., Denton N. Thomas, Andrews & Kurth, Houston, Tex., for plaintiff-appellant.

Louise P. Hytken, U.S. Dept. of Justice, Tax Div., Dallas, Tex., David I. Pincus, Gary R. Allen, Chief, Kimberly S. Stanley, Appellate Sec. Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WISDOM, JOLLY, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

This case presents the question of the proper interpretation of I.R.C. § 613A(b)(1)(B). That section of the Internal Revenue Code provides a percentage depletion allowance for natural gas sold under a fixed contract. The district court ruled that a royalty owner, especially one

who receives royalties based on market value, could not claim the percentage depletion allowance under I.R.C. § 613A(b)(1)(B). Based on this ruling, the district court granted summary judgment against King Ranch, Inc. 746 F.Supp. 658. Because we find that the district court failed to give effect to the plain language of the statute, we REVERSE and REMAND.

## BACKGROUND

The plaintiff, King Ranch, Inc., owns certain lands in south Texas that were subject to oil and gas leases to Exxon for King Ranch's tax years 1975 through 1985. Exxon paid King Ranch a royalty based on the market price of the natural gas produced and sold from the properties. King Ranch alleges that Exxon sold the natural gas thus produced under various fixed price contracts that were in effect as of February 1, 1975.[1]

During the years 1975 through 1985, Exxon paid King Ranch royalties under the terms of the leases. King Ranch claimed a percentage depletion deduction on its federal corporation income tax returns for those same years with respect to the royalty payments. The Internal Revenue Service disallowed the deductions. King Ranch paid the resulting deficiencies and filed administrative claims for refunds. Refund claims for the years 1975 through 1981 and 1983 through 1985 were either disallowed or not acted upon by the IRS. The refund for 1982 was allowed, although neither party has suggested why this year differed from the others.

King Ranch filed an action in district court seeking a refund of taxes paid for the years 1975 through 1981 and 1983. The IRS counterclaimed to recover the refund allowed in 1982. King Ranch then filed a second suit seeking additional deductions for 1982. These suits were subsequently consolidated. King Ranch filed a third suit seeking a refund of taxes paid for the years 1984 and 1985. On February 15, 1990, all of these suits were consolidated.

The parties each filed motions for summary judgment with respect to King Ranch's claim to a percentage depletion allowance under I.R.C. § 613A(b)(1)(B) for the years 1975 through 1985. The district court granted the Government's motion on March 23, 1990. After hearing several intervening motions, the court granted King Ranch's motion for entry of final judgment and for Rule 54(b) certification. King Ranch then filed this appeal.

## DISCUSSION

This Court reviews *de novo* the entry of summary judgment by the district court. Summary judgment is appropriate when it is shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The district court granted summary judgment against King Ranch after determining that, as a matter of law, it was not entitled to a percentage depletion allowance under I.R.C. § 613A(b)(1)(B).

The district court held that King Ranch was not entitled to a percentage depletion allowance for two reasons. First, the court found that I.R.C. § 613A(b)(1)(B) was not applicable to royalty owners because I.R.C. § 613A(c) provides a limited allowance for royalty owners. Even the Government concedes that this rationale is in error. Although I.R.C. § 613A(c) provides a percentage depletion allowance for royalty owners, this provision is not exclusive. Nothing in the statute or the legislative history points to such a result.

Second, and alternatively, the court upheld the Government's interpretation of I.R.C. § 613A(b)(1)(B). This section provides a percentage depletion allowance for "natural gas sold under a fixed contract." This phrase is defined at I.R.C. § 613A(b)(3)(A):

> The term "natural gas sold under a fixed contract" means domestic natural gas *sold by the producer* under a contract, in effect on February 1, 1975, and at all times thereafter before such sale, under which the price for such gas cannot be

---

1. The parties agree that the question of whether Exxon sells the gas under fixed contracts is undecided. This issue must be decided on remand.

adjusted to reflect to any extent the increase in liabilities of the seller for tax under this chapter by reason of the repeal of percentage depletion for gas. Price increases after February 1, 1975, shall be presumed to take increases in tax liabilities into account unless the taxpayer demonstrates to the contrary by clear and convincing evidence.[2]

King Ranch argues that under the plain language of this section, it is entitled to the depletion allowance. The rationale of King Ranch is that the allowance applies as long as the producer of the natural gas sells it under a fixed contract.[3] As King Ranch has pointed out, in the oil and gas industry, a royalty owner is not considered a producer. In this case, Exxon would be considered the producer under the accepted usage of the term. Even the district court seems to agree with this proposition.[4]

The Government's interpretation of this section equates a royalty owner with a producer. The result of this interpretation is that a royalty owner is not entitled to the percentage depletion allowance unless its contract with its lessee is a "fixed contract". The Government avoids the plain language of the statute by insisting that this Court must look beyond the statute in order to discern its true meaning. The Government contends that the purpose of this statute was to provide some relief to those who would be harmed by the repeal of the percentage depletion allowance. In other words, this provision was designed to protect parties who were "locked in" to

contracts that precluded the sale of gas at the higher prices that the repeal would produce. Since King Ranch receives royalties based on market value, it has not been harmed in this manner.

■ Absent an ambiguity, however, this Court will not rewrite a federal statute, no matter now inartfully drafted.[5] The Government points to a line of cases stating that the Court may make limited statutory revisions, even absent an ambiguity, when application of the statute would produce a result directly contrary to the legislative intent.[6] We do not find that line of cases applicable to the present suit. In those cases application of the statute was so absurd "as to shock the general moral or common sense".[7] We do not find that the result in this case reaches that level.

■ This Court cannot rewrite Congressional legislation to cover a situation that Congress may not have foreseen. Absent some ambiguity in the statute, we must apply it as written. The Government has not convinced this Court that the statute in question is ambiguous.

■ In the Tax Reduction Act of 1975,[8] Congress generally repealed the percentage depletion allowance for natural gas. One of the exceptions, however, provides a depletion allowance for "natural gas sold under a fixed contract". This exception, I.R.C. § 613A(b)(1)(B), defines income for which the deduction is allowed according to the contract under which the *producer* of

---

**2.** I.R.C. § 613A(b)(3)(A) (emphasis added).

**3.** In support of its position, King Ranch quotes two oil and gas law commentators who remarked many years ago that the exemption would apparently apply to a taxpayer in King Ranch's shoes. *See* Bravenec, *Continued Availability of Percentage Depletion on Oil and Gas,* 23 Oil and Gas Tax Q. 204, 207 n. 10 (1975); Linden, *Oil and Gas Depletion Regulations: Complexity Compounded,* 24 Oil and Gas Tax Q. 351, 356 n. 9 (1976).

The existence of these articles suggests that the IRS has been on informal notice for many years of the meaning attributed to the statute by disinterested experts.

**4.** At one point in its opinion, the district court states:

"[T]his exemption is only addressing the gas sold under a fixed contract by the producer, Exxon". Amended Memorandum and Order, at 5 (August 24, 1990).

**5.** *Grider v. Cavazos,* 911 F.2d 1158, 1163 (5th Cir.1990). "The highest form of judicial restraint is resistance of the temptation to cure inartfully drafted legislation by indulging in 'judicial legislation.' " *Id.*

**6.** See the cases cited in *Abdalla v. Commissioner,* 647 F.2d 487, 496–97 (5th Cir.1981).

**7.** *Abdalla,* at 497 (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930)).

**8.** Pub.L. No. 94–12, 89 Stat. 47 (codified as amended in scattered sections of 26 U.S.C.).

the gas *sells* the gas, not the contract under which the producer pays the royalty owner. A plain reading of the statute indicates that as long as the gas Exxon produces under its lease with King Ranch is sold to Exxon's customers under fixed contracts, then King Ranch is entitled to the percentage depletion allowance for royalty payments with respect to that gas, regardless of the method of calculating royalty payments.

We REVERSE the judgment of the district court and REMAND the case for further proceedings.