**Elaine Morrison FOSTER, Plaintiff,**

v.

**Lamar ALEXANDER, Secretary, United States Department of Education, et al., Defendants.**

**Civ. A. No. 91–2682.**

United States District Court, District of Columbia.

Jan. 27, 1993.

Elaine M. Foster, pro se.

Claire M. Whitaker, Asst. U.S. Atty., Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This simple but bothersome case comes before the Court on cross motions for summary judgment. Pursuant to Fed.R.Civ.P. 56(b), summary judgment shall be granted upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." After reviewing the record herein, we agree with defendants that plaintiff has failed to make a showing sufficient to establish the existence of the essential elements upon which her claims depend. There is no genuine issue as to any material fact. Furthermore, we find that plaintiff's statute of limitations arguments must fail under 20 U.S.C. § 1091a (1992). Accordingly, we find that defendants are entitled to judgment as a matter of law.

### Background

From August 28, 1968 through September 14, 1970, plaintiff Elaine Foster[1] borrowed a total of $5,000.00 under the Federal Insured Student Loan program ("FISL") authorized under Title IV–B of the Higher Education Act of 1965, as amended 20 U.S.C. § 1071 *et seq.* (1990), (34 C.F.R. Part 282). At the time, Ms. Foster was pursuing a post-graduate doctorate in the humanities at Florida State University.[2] Plaintiff made payments to the holder of the loans, St. Augustine National Bank, now Barnett Bank, until 1976, at which time scheduled payments by plaintiff allegedly stopped.[3] The total amount paid dur-

1. At the time plaintiff signed the promissory notes at issue, she was apparently known as Effamae M. Foster. See Plaintiff's Promissory Notes at Defense Exhibits B1–B5.

2. See affidavit of Elaine Morrison Foster in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment on their Counterclaim, (Plaintiff's Memorandum) at Plaintiff's Exhibit A.

3. Defendants claim they received an additional payment of $235.52 on December 5, 1977, which plaintiff denies making. Plaintiff argues that without this last alleged payment, defendants were barred by the statute of limitations from

offsetting her 1986 tax return in March of 1987, under 31 U.S.C. § 3716(c)(1); and that defendants were barred from bringing their counterclaim for payment of the balance of the loan under 31 U.S.C. § 3720A. While plaintiff may have found support for these arguments in the case of *Grider v. Cavazos,* 911 F.2d 1158 (5th Cir.1990) (holding that tax offsets may only be applied to debts which have been "delinquent" for ten years or less, with the period of delinquency measured from the date the loan becomes overdue to the loan holder, not from the subsequent date the loan is turned over to the Department for collection), the conclusions reached by that court no longer hold in light of the express language of Section 3 of the Higher Education Technical Amendments Act, P.L. 102–

ing this period was $1,641.91.[4]

On April 15, 1977, St. Augustine National Bank demanded payment from the Department of Education ("the Department") as the insurer of the loans. The claim was approved for payment by the Department on September 12, 1977, and plaintiff's outstanding promissory notes were assigned to the Department by the bank on September 24, 1977. Thereafter, the Department assumed collection responsibilities.

On October 18, 1986, the Department sent plaintiff a letter providing notice that her 1986 tax refund would be offset to satisfy her outstanding FISL debt, and notifying plaintiff that she could request review of the debt within 65 days. Plaintiff did not request a review. On March 20, 1987, plaintiff's tax refund of $2,797.47 was offset in partial satisfaction of plaintiff's outstanding loans. At and around this time, plaintiff repeatedly protested to the Department both verbally and in writing that her debt had been paid in full by her ex-husband, Mr. Hubert Foster, as a part of their divorce settlement. Plaintiff was unable to furnish proof of that alleged payment. By letter dated August 3, 1990, the remaining balance owed on plaintiff's FISL loan,[5] was discharged on grounds of uncollectibility.

Plaintiff continues to maintain that her loans were paid in full in or around 1975, and that since then she has not owed any debt to the Department. She proceeds *pro se* and brings three claims: Count One comes under the Privacy Act, 5 U.S.C. § 552a(g) (1977) seeking correction of alleged errors in her loan file, damages for harm resulting from those errors, and litigation costs; Count Two comes under the Tucker Act, 26 U.S.C. § 6402(d) (1992), seeking a refund of her allegedly improper-

ly offset 1986 tax return; and Count Three comes under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, (1992) and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, (1992), seeking an order directing the Department to discontinue its allegedly false reports to outside credit bureaus regarding plaintiff's delinquent credit obligations, expunging all such prior reports, and requesting a declaration of the rights of plaintiff in light of the Secretary of the Department's allegedly improper actions towards her.

Defendants deny plaintiff's allegations, and counterclaim pursuant to 28 U.S.C. §§ 1345, 1346(c) for payment of that portion of the debt which remains unpaid to date—namely the sum which was previously discharged on grounds of uncollectibility—plus additional interest and penalties.

*Discussion*

A. *Plaintiff fails to make a sufficient showing of the essential element upon which her claims depend.*

Under Fed.R.Civ.P. 56(c), the moving party has the burden of demonstrating first that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Second, the moving party must show that it is "entitled to a judgment as a matter of law." We believe that defendants have met this burden.

■ The case of *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), is particularly instructive in analyzing when defendants' burden of showing that there is no genuine issue as to any material fact has been met. The Supreme Court ruled in *Celotex* that:

26, enacted April 9, 1991, codified at 20 U.S.C. § 1091a (1992). *See* the Discussion section of this opinion for further description of the Act. Therefore defendants are not barred from offsetting plaintiff's tax return or from bringing a counterclaim at this time to collect the balance of the debt. Accordingly, it is immaterial to the dispute at hand whether or not plaintiff made a loan payment on December 5, 1977, and thus this Court declines to address that question here.

4. See Defense Exhibit C.

5. Plaintiff's total debt as calculated by defendant as of December 23, 1991 was $328.90 in principal, $2,193.35 in interest, plus continuing interest accruing at a rate of 7% per annum. See Defense Exhibit A.

"In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, *against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,* and on which that party will bear the burden of proof at trial. In such a situation, there can be "no *genuine* issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Id.,* at 322–323, 106 S.Ct. at 2552 (emphasis added). Therefore, in order to survive a motion for summary judgment, the nonmoving party must make a sufficient showing that she will be able to prove the essential elements of her claim(s).

■ The alleged payment in full of Ms. Foster's loans is an essential element of plaintiff's claims within the meaning of *Celotex.* If plaintiff cannot show that she has paid off her loan in full, then she cannot show that the Department has maintained errors in her file, and hence cannot recover under the Privacy Act. Likewise, without proof that she did not owe the Department a debt, plaintiff cannot show that her 1986 tax return was improperly offset (plaintiff's statute of limitations arguments are discussed below), and cannot recover under the Tucker Act. Finally, without proof that the Department's records evidencing plaintiff's unpaid debt are false, plaintiff cannot force the Department to discontinue distributing its reports to outside credit bureaus or force the Department to expunge all prior reports, pursuant to the Declaratory Judgment Act and the Administrative Procedure Act.

Even after viewing the evidence presented to the Court in the light most favorable to Ms. Foster,[6] we find that she has failed to make a showing sufficient to establish that her FISL debt was ever paid in full. Plaintiff has repeatedly protested to the Department, and repeatedly maintains in her submissions to this Court that "to the best of [her] information and belief" the balance of her FISL loan was paid in full by her ex-husband, Mr. Hubert Foster. *See* Plaintiff's Motion for Summary Judgment at p. 2. Despite defendants' requests for proof of this payment, however, and despite the length and painstaking detail of plaintiff's filings before this Court, plaintiff has never produced any evidence to support her claims. Her claims of payment are merely conclusory without factual basis.

Defendants, on the other hand, have offered proof to the Court that Ms. Foster's debt was never paid in full, and that her theory of full payment by her ex-husband, no matter how sincerely believed by Ms. Foster, is simply not credible. Defendants have submitted in affidavit form a Certificate of Indebtedness prepared by a Supervisory Paralegal Specialist in the Research Branch of the Litigation Section of the Department that shows total payments received from Ms. Foster of $1,641.91. *See* Defense Exhibit A. They have also submitted an affidavit by the Acting Chief of the Research, Litigation & Support Branch of the Department which confirms an outstanding debt as of February 5, 1992 of $328.90 of principal plus $2,227.98 interest (which has since continued to accrue at a rate of 7% per annum). *See* Defense Exhibit I.

Defendants have submitted an additional affidavit executed by Assistant U.S. Attorney Claire M. Whitaker recounting her separate telephone conversations with Mr. Hubert Foster and Mr. Malcomb L. Stephens, Jr., Esq., the son of Malcomb L. Stephens, Esq., now deceased, who was the attorney who handled the Foster's divorce in St. Augustine, Florida in 1975. *See* Defense

---

**6.** "On summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Exhibit F. The Whitaker Affidavit quotes Mr. Hubert Foster declaring by phone "I didn't pay and didn't agree to pay any student loans" for Ms. Foster. The Whitaker Affidavit further declares that Mr. Stephens, Jr., Esq., stated that in response to a previous request by plaintiff he had reviewed the file compiled by his father on the Foster divorce and that he had found no document or other evidence indicating any agreement that Mr. Foster was to repay Ms. Foster's student loans.[7]

Upon considering plaintiff's lack of evidence that her FISL loan was paid in full, in contrast with defendants' proffered evidence of nonpayment, we hold that plaintiff has failed to make a sufficient showing on this essential element of her claims under *Celotex*. Accordingly, defendants are entitled to judgment as a matter of law. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Celotex*, at 323–324, 106 S.Ct. at 2553. Accordingly, this Court feels that it is appropriate that Ms. Foster's unsupported claims be disposed of at this time.

B. *Plaintiff's statute of limitations argument must fail under 20 U.S.C. § 1091a.*

In addition, plaintiff argues in her Motion for Summary Judgment that defendants acted improperly in offsetting her 1986 tax refund because this action violated the ten year statute of limitations for administrative offsets contained in 31

U.S.C. § 3716(c)(1) (1983). Plaintiff overlooks, however, the advent of Section 3 of the Higher Education Technical Amendments Act, P.L. 102–26, enacted April 9, 1991, and codified at 20 U.S.C. § 1091a (1992), ("the Act"). This Act eliminated the bar of any statute of limitations on government collection of student loans financed by the Department of Education.[8]

The Act is very clear. Specifically, 20 U.S.C. §. 1091a provides:

"(1) It is the purpose of this subsection to ensure that obligations to repay loans ... are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced.

(2) Notwithstanding any other provision of statute, regulation or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken ..."

Furthermore, the law expressly provides that this new authority shall apply to any actions pending at the time of its passage, April 9, 1991, and to actions brought before November 15, 1992. Pub.L. 102–26 § 3(c). Accordingly, this law properly applies to the offset of plaintiff's 1986 tax return by defendants,[9] and to defendants' counterclaim against plaintiff for the outstanding balance of the loans [10] which had previously been written off as uncollectible. In neither instance can the government be said

---

**7.** The Court notes that even if such an agreement were proven to exist, the burden would remain on plaintiff to produce proof of actual payment. If no such payment were ever made, plaintiff would then have a claim against her ex-husband, not the Department of Education.

**8.** The Court notes that prior to the passage of this Act, the circuits which had interpreted the statutes of limitations restrictions contained in 31 U.S.C. § 3716(c)(1) and 26 C.F.R. 301.6402–6T(b)(1) had reached conflicting conclusions. *Thomas v. Bennett*, 856 F.2d 1165 (8th Cir.1988) and *Hurst v. U.S. Department of Education*, 695 F.Supp. 1137 (D.Kan.1988), affirmed 901 F.2d 836 (10th Cir.1990), concluded that the statute of limitations did not run until the loan was delinquent, and that delinquency was to be measured from the time the loan was turned over to

the Department by the loan holder. On the other hand, *Grider v. Cavazos*, 911 F.2d 1158 (5th Cir.1990) held that delinquency was to be measured from the time the loan became overdue to the loan holder, a date which necessarily precedes the date the loan is turned over to the department. So prior to the passage of the Act, plaintiff could have argued that the statute of limitations on offsets had run in her case using the *Grider* measurement. However, the Act has rendered this argument moot. Accord *United States v. Carolyn E. Smith*, 811 F.Supp. 646 (S.D.Ala.1992).

**9.** The offset of plaintiff's 1986 tax return was initiated in 1986 and taken on March 20, 1987.

**10.** Defendants' counterclaim was filed on December 31, 1991.

**10**

to be in violation of a statute of limitations since Congress has specifically exempted these actions from any such statutes.

Therefore, pursuant to the above discussion, and upon consideration of the entire record herein, we grant defendants' motion for summary judgment. An Order consistent with the above is entered on this date.

### ORDER

It is this 27th day of January, 1993, hereby

ORDERED pursuant to this Court's Memorandum Opinion filed on this date, that plaintiff's Motion for Summary Judgment be denied and that defendants' Motion for Summary Judgment be granted; and it is

ORDERED that a judgment for the defendants be entered in the amount of $2,556.88 ($328.90 principal, plus $2,227.98 interest), plus prejudgment interest from February 6, 1992 to the date of the judgment calculated at a rate of 7% per annum in accordance with the terms of plaintiff's outstanding loans, plus postjudgment interest at a rate of 3.67% as prescribed by 28 U.S.C. § 1961, plus administrative and court costs; and it is

FURTHER ORDERED that a surcharge of 10% of the total amount of the debt is imposed in favor of defendants and against the plaintiff, pursuant to 28 U.S.C. § 3011.