Johnnie L. BLAKE

v.

Henry CISNEROS, Secretary of the United States Department of Housing and Urban Development.

Civ. A. No. G–92–455.

United States District Court, S.D. Texas, Galveston Division.

Nov. 19, 1993.

Kenneth .Charles Kaye, League City, TX, for plaintiff.

Eleanor A. Robinson–Gaither, U.S. Attorney's Office, Houston, TX, for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Johnnie L. Blake commenced this action by filing a document styled "Petition for Review of Administrative Order," wherein Mr. Blake asked this Court to set aside orders of the United States Department of Housing and Urban Development (HUD) Board of Contract Appeals (BCA) authorizing HUD to refer a debt of Blake's to the Internal Revenue Service for offset against any tax refund which may otherwise have been owed to Blake. Before the Court is Blake's Motion for Summary Judgment, HUD's Motion to Dismiss, and HUD's Motion for Summary Judgment. Mr. Blake's motion is DENIED, HUD's motion to dismiss is DENIED, and HUD's motion for summary judgment is GRANTED.

### I. Background

The subject dispute concerns a promissory note in the original principal sum of $12,000.00, purportedly executed by the Plaintiff Johnnie Blake and his former wife, Rebecca Lynn Blake, in favor of Amoco Employees Federal Credit Union (Credit Union). After making this note, Johnnie and Rebecca divorced in 1983. The Texas Divorce Court awarded Rebecca the real property which secured this note, and ordered her to pay the balance and interest on the note and to indemnify Johnnie for any failure to so discharge this debt. The Divorce Court also ordered Rebecca to pay certain other debts to the Credit Union.

Rebecca failed to pay these debts. In 1984, Johnnie filed a "Motion for Enforcement and Clarify Judgment" with the Divorce Court, and served the Credit Union as a party. The Credit Union answered with the undeniably correct assertion that the Divorce Court had no jurisdiction to disturb the Credit Union's rights with regards to the debts of Johnnie and Rebecca. In its subsequent "Order of Enforcement and Clarifying Judgment," the Divorce Court reiterated that Rebecca owed the remainder of certain notes, and that Rebecca was to indemnify Johnnie for any failure to pay these. However, *nowhere* does this Order of Enforcement refer to the $12,000.00 note at issue in the case at bar, and *nowhere* does this Order purport to affect the rights of the Credit Union in any way.

HUD had insured the $12,000.00 note against nonpayment pursuant to Title I of the National Housing Act, 12 U.S.C. § 1703. In 1988, after Rebecca continued to fail to make payments on the note, the Credit Union assigned the note by endorsement to the United States of America, on whose behalf the Defendant herein currently holds the note. The note remains in default, and the current unpaid principal and interest amount to a little over $10,000.00.

Pursuant to the Deficit Reduction Act of 1984, 31 U.S.C. § 3720A, HUD referred this debt to the Secretary of the Treasury for offset against any refund which may have been due to Johnnie Blake on his Federal Income Tax Return. Johnnie objected to this action on the basis that the Divorce Court's "Order of Enforcement" made this debt legally unenforceable against him. On December 23, 1991, the HUD BCA overruled this objection. Johnnie appeals that decision to this Court.

### II. Jurisdiction

Mr. Blake's Petition does not comply with Federal Rule of Civil Procedure 8(a)(1), which requires any pleading which asks for relief to include a short and plain statement

of the grounds upon which the court's jurisdiction depends. Even in response to HUD's motion to dismiss on this basis, Blake has cavalierly refused to point to any statute under which this Court may exercise jurisdiction over this claim.

Ordinarily, such intransigence would alone compel this Court to dismiss the action. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1214 (1969). However, the Court also acknowledges that, when the United States is a party, the pleading burden of Rule 8(a)(1) "occasionally proves difficult to discharge." *Id.* at § 1212. The procedural history of this case underscores this concern. Mr. Blake originally filed this review action in the Court of Appeals for the Federal Circuit, on the theory that jurisdiction there was proper under 28 U.S.C. § 1295(a)(10) as review of agency action under the Contracts Disputes Act, 41 U.S.C. § 601 et seq. The Federal Circuit dismissed that claim, holding that the subject contract is not within the purview of the Contracts Dispute Act and, therefore, jurisdiction over this action "lies, if anywhere, in federal district court." *Blake v. Kemp,* 979 F.2d 215 (Fed.Cir.1992). That Court also denied Mr. Blake's subsequent motion to transfer the case to a district court because Blake did not demonstrate the necessity for such action. "Indeed, Blake has not shown that the district court would have jurisdiction over this case." *Blake v. Kemp,* No. 92–1339 (Fed.Cir. Nov. 23, 1992), *cert. denied,* 123 L.Ed.2d 467 (1993).[1]

▪ Despite Mr. Blake's apparent attitude that research of potential jurisdictional bases is not worthy of his effort, this Court will nonetheless exercise subject matter jurisdiction over his claims in order to afford some sense of finality to this seemingly endless litigation over a simple promissory note.[2] While a specific jurisdictional grant for this review cannot be found in the statutes, the power to make the dispositions made herein is granted under one or more of the following jurisdictional statutes: 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (Tucker Act), and 28 U.S.C. § 1361 (mandamus). It would also appear that every Court which has published an opinion on review of agency referrals under 31 U.S.C. § 3720A has either explicitly found or implicitly assumed that the Federal District Court had original jurisdiction over such review. *See, e.g., Grider v. Cavazos,* 911 F.2d 1158 (5th Cir.1990); *Hurst v. United States Dep't of Education,* 901 F.2d 836 (10th Cir.1990); *Jones v. Cavazos,* 889 F.2d 1043 (11th Cir. 1989); *Thomas v. Bennett,* 856 F.2d 1165 (8th Cir.1988) (holding that 26 U.S.C. § 6402(e) does not bar jurisdiction over claim against Secretary of Education for review of 31 U.S.C. § 3720A referral); *Gerrard v. U.S. Office of Education,* 656 F.Supp. 570, 572–73 (N.D.Cal.1987) (finding jurisdiction under the Tucker Act); *see also Richardson v. Baker,* 663 F.Supp. 651 (S.D.N.Y.1987) (simply listing six possible bases for subject matter jurisdiction).

▪ HUD also asks for dismissal for Blake's failure to plead a waiver of sovereign immunity, another prerequisite to subject matter jurisdiction. Again, while this Court is loathe to forgive this defect, it is nonetheless clear that the United States has waived sovereign immunity for this type of action through the Administrative Procedure Act, 5 U.S.C. § 551 et seq. *Sheehan v. Army & Air Force Exchange Serv.,* 619 F.2d 1132, 1139 (5th Cir.1980), *rev'd on other grounds,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). This Act explicitly grants the right of judicial review of agency actions, and directs that such a claim "shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. A cause of action for review of agency action is available unless a showing

---

1. HUD also asks for dismissal or summary judgment on the theory that "Plaintiff is Barred By Res Judicata, Collateral Estoppel, or Estoppel by Judgment," apparently based on these prior Federal Circuit attempts at review. As that action was dismissed on jurisdictional grounds which are not relevant here, this argument is ridiculous on its face.

2. Of course, finality is only relative; the Court understands that Mr. Blake is prosecuting related litigation in the courts of Texas and, as discussed below, the Defendant has dismissed without prejudice the administrative action underlying this review.

is made of a "clear and convincing" contrary legislative intent to restrict access to judicial review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). HUD has made no such showing.

### III. Standing/Ripeness

■ On November 2, 1992, after the commencement of this action, HUD BCA dismissed the proceedings underlying this review on the motion of Defendant. On this basis Defendant argues that the case is not ripe, and that Blake is without standing because no case or controversy exists which this Court can resolve, as required by Article III of the United States Constitution.

This argument is without merit. The BCA dismissed the action without prejudice to HUD's right to refer the debt to the IRS in the future. Article III only requires that the party invoking the Court's authority "show that he personally has suffered some actual or *threatened* injury as a result of the putative illegal conduct of the defendant, and that the injury ... is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United For Sep. of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted) (emphasis added). It is undisputed that Mr. Blake faces a threatened injury: HUD holds a note purportedly signed by Mr. Blake, on which HUD has indicated a clear intention to collect. Furthermore, its appears from HUD's pleadings that this is not the first instance in which HUD has begun the referral process and then dismissed the action, leading this Court to conclude that the threat of future injury is not hypothetical, but both "real and immediate." *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d

675 (1983); *American–Arab Anti–Discrim. Comm. v. Thornburgh,* 970 F.2d 501, 506–08 (9th Cir.1991) (finding standing where government had dropped underlying charges for tactical reasons). A favorable decision by this Court would resolve the conflict at issue because, if this Court were to declare the debt not legally enforceable, future proceedings by HUD would be barred. Conversely, if Mr. Blake's claims were valid, dismissal of this action would permit the Secretary to nonetheless continuously repeat the wasteful course which HUD has taken in this case[3] while effectively evading judicial review. *See Thomas,* 856 F.2d at 1168 & n. 3 (review of federal loan debt referral to IRS is not moot simply because offset had already occurred, as declaratory relief was still available and future offsets were threatened).

### IV. The Merits

In his Petition for Review, Mr. Blake contests HUD's referral of his debt to the IRS on the sole basis that the judgment of the Texas divorce court rendered the debt unenforceable as against him. The parties do not dispute the facts necessary to decide this question of law.[4] Accordingly, summary judgment in favor of HUD is appropriate because the pleadings and evidence on file "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Mr. Blake bases his objection to the offset at issue here on the following language in the Divorce Court's "Order of Enforcement and Clarifying Judgment": "The Court ORDERS that the balance due of $465.15 on [a different note] ordered to be paid by JOHNNIE LOUIS BLAKE is all he owes as of July 2, 1984, and Respondent [Rebecca] owes the rest." Mr. Blake argues that: (1)

---

3. HUD has offered no explanation for its repeated dismissals. Unfortunately, this leaves the impression of a disgraceful display of government inefficiency in collecting debts, where litigation costs are allowed to soar to avoid losing at the price of winning. The Court notes that eventually this tactic may itself form the basis of a determination that HUD is estopped from collecting on this note.

4. Mr. Blake also now contests the original validity of the debt on the grounds of forgery. As discussed in Part V. below, however, this contention is irrelevant to this review proceeding. In other words, the validity of Mr. Blake's signature is not a fact that is material to the pleadings.

this language constitutes a binding judgment enjoining collection from Mr. Blake on the $12,000.00 note, and (2) HUD is bound by that order because the Credit Union, which held the note at that time, was made a party to that action. This Court wholeheartedly agrees with the conclusion of the learned HUD BCA Administrative Judge that the basis of this argument is an unsound and distorted interpretation of the state court judgment, and adopts the reasoning of that tribunal:

> While I agree with Petitioner's contention that Amoco [Employee's Federal Credit Union] was a party to the later divorce proceeding, I do not find that fact dispositive, *per se,* of the issue of Petitioner's liability under the agreement. The order entered by the court does not state that Petitioner is "released" from liability under any of the notes, and for unexplained reasons, does not make specific mention of the $12,000.00 note. That order does not require Amoco to do anything or refrain from doing anything with respect to the obligation in question. Moreover, the order states that Petitioner and his former spouse, not Amoco, shall indemnify and hold each other harmless on their respective obligations under the order. I find this indemnification language antithetical to the notion of release, as it connotes compensation for loss or damage that might later occur. If the order released Petitioner from further liability, the indemnification language would not be necessary.

> In addition, Petitioner's interpretation of the order is unreasonable, because it is unduly narrow and strained. The words Petitioner relies upon are taken completely out of context with the sentence in which they are found, which refers specifically to a note secured by a lien upon a pickup truck. At the very least, these words refer to the note underlying the pickup truck transaction, and at most, the three notes mentioned in the order. I find no basis to apply these words to a note that is not referenced in the order.

It is well-settled law in Texas that divorce courts lack jurisdiction to disturb the rights of a creditor to collect from either of the divorcing parties on an obligation that is joint and several. *Wileman v. Wade,* 665 S.W.2d 519 (Tex.Civ.App.1984) citing *Broadway Drug Store of Galveston, Inc. v. Trowbridge,* 435 S.W.2d 268 (Tex.Civ.App. 1968). Likewise, it is well-settled that trial court judges are presumed to know the law and apply it correctly. *Walton v. Arizona,* [497 U.S. 639,] 110 S.Ct. 3057 [3047, 111 L.Ed.2d 511] (1990) and cases cited therein. I am not convinced, as Petitioner argues, that the judge incorrectly applied the law by releasing Petitioner in his March 14, 1985 order. To the contrary, the more reasonable interpretation of that order is that it did not affect Amoco's rights, under Texas law, to collect the debt from Petitioner, his former spouse, or both. Since Amoco's rights were not affected by that order, HUD, the assignee of the defaulted loan, is not constrained by that order from seeking to recover sums due and owing. *In re Blake,* HUDBCA No. 91–G–6908–N601 (Feb. 11, 1992) (Greszko, J.). If anything, Judge Greszko treated Mr. Blake's claim too generously; this Court finds his argument not only unreasonable, but preposterous.

This is not to say that this Court has no sympathy for Mr. Blake's position. He finds himself possibly forced to pay a debt which the Divorce Court ordered his former wife to pay. In fact, the Blakes incurred this debt for improvements to real property which that same Court awarded to Rebecca, so Mr. Blake has not even personally received the full benefit of that obligation. However, the Credit Union (and HUD by proxy) extended the underlying loan to Johnnie and Rebecca Blake based at least in part on Mr. Blake's promise to repay.[5] There is no principle of law or equity which allows Mr. Blake's release from that obligation at HUD's expense simply by virtue of the Blakes' decision to terminate their marriage. Indeed, if such a possibility were permitted, married couples would be unable to secure financing based on their joint resources, as every lender would predicate every marital loan on the ability of

---

5. *But see* Part V., *infra.*

each party to individually service the debt in case of divorce. As such a result would wreak unnecessary hardship on most marriages, justice requires that HUD retain its ability to collect the debt from Mr. Blake, while Mr. Blake's remedy *remains* his right to seek full indemnification from Rebecca.

There is no evidence to suggest that the Divorce Court disregarded these principles; indeed, the absence of any reference to the Credit Union as a party in any order of the Divorce Court implicitly demonstrates that Court's respect for these axioms. Therefore, the uncontroverted evidence on file having shown that the HUD BCA decision was correct in every regard, HUD's motion for summary judgment is GRANTED and Mr. Blake's motion is DENIED.

## V. Forgery or Perjury?

■ On May 26, 1993, over a year and a half after objecting to HUD's referral of his debt, eight months after filing this action, and one month after filing his initial motion for summary judgment, Johnnie Blake filed in this Court a pleading in which, apparently for the first time, he asserts that he did not, in fact, sign the note at the heart of this dispute. In support of this contention, Mr. Blake submitted his own affidavit, in which he stated:

> "I have carefully examined what purports to be my signature on such note; it is not my signature, and bears no resemblance to my signature as can be readily seen by an examination of my signature on this Affidavit and what purports to be my signature on the promissory note.
>
> "I did not sign the original or any copy of the note...."

While Mr. Blake referred to this contention in his original motion for summary judgment, he also conceded there that this basis for contesting collection is brought too late for this review proceeding. The scope of this action is limited to a review of the HUD BCA decision. Generally, when a petitioner fails to raise an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal. *United States v. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Plaintiff has pointed to no exception to this rule which applies here, and indeed this Court can imagine none. Therefore, the affidavit is irrelevant to this case.[6]

Nonetheless, out of an abundance of curiosity, this Court has taken Mr. Blake's suggestion and compared the signature on his affidavit with that on the note. While the Court is admittedly untrained in this regard, the signatures appear to be as identical as two specimens can be. Furthermore, the credibility of this claim is undermined by the facts that: (1) Mr. Blake apparently did not contest the validity of his signature in any divorce proceeding, any HUD BCA proceeding, or in his appeal to the Federal Circuit and Supreme Court; (2) in several pleadings during the course of those proceedings Mr. Blake conceded the validity of the note; (3) the note was apparently signed before a notary public; and (4) the former Rebecca Blake has submitted a controverting affidavit. Sadly, it strongly appears that Mr. Blake has committed perjury in an utterly futile attempt to further his cause. The Court empathizes with Mr. Blake's seeming frustration with this entire matter, but it can hardly allow his extrication by means of what may ultimately be found to be manifestly criminal conduct. In the usual case, this Court would feel bound by its oath of office to *sua sponte* refer Mr. Blake's affidavit to the United States Attorney, Criminal Division, for investigation as to possible violations of 18 U.S.C. § 1621. Because the United States Attorney is opposing counsel in this matter, however, the Court will leave such referral to the discretion of that office.

## VI. Wasted Resources

While the above opinion disposes of this Court's involvement with this case, the con-

---

6. Had HUD taken the efficient route of counterclaiming for collection on the note, this Court would then need to address whether this affidavit raised a fact issue as to such counterclaim, precluding final judgment, or whether the forgery claim is prevented by laches as a matter of law. However, Defendant's First Amended Answer and Counterclaim foreswore such a course by asserting the counterclaim only "[i]n the unlikely event of a finding against Defendant" on the motions at bar.

**840**

duct of both parties to this litigation calls for brief comment by the Court. This Court maintains one of the largest civil dockets of any of the United States District Courts in the country. Yet it is rare that the Court is forced to preside over such a senseless waste of judicial resources as that presented by this case. For one thing, the volume of the file in this Court alone suggests that both parties have incurred litigation expenses far in excess of the value of the underlying debt. From the Plaintiff's side, Mr. Blake has opposed collection on this $10,000 debt in at least six different judicial forums, first based on an absurd legal proposition and, more recently, based on a seemingly absurd factual proposition. There is no indication that he has even attempted to pursue his only real remedy, indemnification from his former wife. Rather, he has demonstrated only a steadfast determination to oppose, at any cost, payment of a debt he agreed to pay.

The Court finds the government's treatment of this debt equally frustrating. With the Deficit Reduction Act, Congress gave agencies like HUD an efficient means of collecting its debts, with the clear intention that agencies would utilize it. Yet HUD has owned this note for five years without obtaining the prescribed tax refund offset. Without explanation, HUD has at least twice dismissed IRS referrals of this debt, while spending a far greater amount in taxpayer dollars to avoid final resolution of Mr. Blake's claims. *Cf.* note 3, *supra.* HUD has not even pursued a counterclaim herein for judgment on the underlying note. While HUD has "won" this action, the debt lives on.

Unfortunately, perhaps, this Court is not empowered to sanction parties for wasting their money, even when the funds of one party are held in trust for the citizens of the United States. Mr. Blake has the right to pursue judicial review of his position as long as it exceeds the threshold of frivolity, even if it barely meets that standard. And at this point in time, a solution for grossly inefficient government bureaucracy has yet to be found. The Court can only implore HUD to either pursue the debt it is owed with the vigor of a rational being, or leave Mr. Blake in peace.

\* \* \* \* \* \*

For the reasons stated above, Defendant's motion for summary judgment on the entirety of Mr. Blake's claim is GRANTED. Defendant's motion to dismiss, and Plaintiff's motion for summary judgment, are DENIED. Furthermore, all other relief not specifically granted herein is DENIED. It is further ORDERED that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.

### *FINAL JUDGMENT*

For the reasons stated in the Court's Order entered this date, the above-captioned action is hereby DISMISSED. Each party shall bear his or its own taxable costs and expenses incurred herein to date.

THIS IS A FINAL JUDGMENT.

IT IS SO ORDERED.