Peter W.G. McNEILY, Liquidator for Independent American Participating Income Fund, L.P.,

v.

UNITED STATES of America; Sunbelt Savings, F.S.B.; FDIC as Manager of FSLIC Resolution Fund; FDIC as Manager of FSLIC Resolution Fund and Receiver for Independent American Savings Association; FDIC as Manager of the FSLIC Resolution Fund as Receiver for Independent American Savings Association; Richard H. Crowe, Jr., Individually; Jack R. Gaubert, Individually; Janice H. Gragg, Individually; Tommy G. Lane, Individually; Robert M. Russell, Individually and Arthur L. Westcot, Individually.

Civ. A. No. 3–88–1853–H.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 8, 1992.

Richard G. Elliott and Scott J. Finkelstein, Richards, Layton & Finger, Wilmington, Del., Robert M. Cohan and Sarah L. Scharnberg, Cohan, Simpson, Cowlishaw Aranza & Wulff, Dallas, Tex., for plaintiff.

Thomas Holzman, FDIC, Legal Div., Washington, D.C., Michael H. Gentry, West Adams Webb & Allbritton, Bryan, Tex., for defendants.

Robert M. Greenberg, Dallas, Tex., for defendant Gaubert.

Orrin Harrison, III and David P. Blanke, Locke Purnell Rain & Harrell, Dallas, Tex., for FSLIC and Gragg.

Paul Boudreaux, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Marvin Collins and Rebecca Gregory, Office of U.S. Atty., Dallas, Tex., for U.S.

Donald A. Wall, Squire, Sanders & Dempsey, Phoenix, Ariz., for FSLIC in its Corporate Capacity.

Richard H. Crowe, Jr., pro se.

David Duke, Arlington, Tex., for defendant Westcot.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Resolution Trust Corporation's Motion to Stay and Supporting Memorandum, filed October 9, 1991; Plaintiff's Opposition to Resolution Trust Corporation's Motion, filed November 7, 1991; and Resolution Trust Corporation's Reply Brief in Support of its Motion, filed December 4, 1991.

### I. *Statement of Case*

Plaintiff, Peter McNeily, was appointed liquidator for the Independent American Participating Income Fund, L.P. ("IAPIF") on June 30, 1987. On August 9, 1988 Plaintiff filed suit seeking relief for IAPIF's losses from various parties, including a predecessor to Sunbelt Savings, FSB ("Sunbelt"). Sunbelt was placed into Resolution Trust Fund ("RTC") receivership on April 25, 1991. RTC as receiver stands in Sunbelt's stead as a party defendant. *See* 12 U.S.C. § 1821(d)(2)(A).

On October 9, 1991 RTC, in its capacity as receiver for Sunbelt, moved for a stay of the entire action. RTC argues that a stay is warranted because the Court lacks subject matter jurisdiction over Plaintiff's claims against RTC until the administrative procedures of FIRREA[1] are exhausted[2]. RTC further argues that since RTC is the target of nearly all of Plaintiff's claims, the stay should extend to the entire proceeding.

The Plaintiff opposes the motion for stay on the ground that FIRREA expressly allows for the continuation of an action brought *prior* to receivership. In any event, the Plaintiff argues that a stay should be limited to only those proceedings involving RTC as receiver.

---

1. Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (August 9, 1989).

2. The Court notes at the outset the inherent inconsistency to RTC's argument. If the Court lacks subject matter jurisdiction, dismissal is the appropriate action and not a stay. The court in *Marc Dev., Inc. v. Federal Deposit Ins. Corp.,* faced this same issue where the FDIC "used the term 'jurisdiction' in a less technical and more practical sense," and urged the court not to read the statutory provisions of FIRREA regarding jurisdiction literally but rather as providing for stay pending administrative proceedings. 771 F.Supp. 1163, 1165 (D.Utah 1991). RTC, in contrast, provides no explanation for this apparent inconsistency, and as in *Marc,* the Court finds it unnecessary to collapse into a single concept the otherwise distinct notions of "lack of jurisdiction" and "stay".

## II. *Analysis*

The parties are in agreement that under FIRREA exhaustion of administrative remedies for suits filed *after* receivership is prerequisite to the subject matter jurisdiction of federal district courts. FIRREA imposes strict limitations on judicial review:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may require from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

*See* 12 U.S.C. § 1821(d)(13)(D) [3]. *See also Resolution Trust Corporation v. Crow,* 763 F.Supp. 887, 892–93 (N.D.Tex.1991). "The overriding purpose for establishing these administrative procedures is to 'enable ... the [RTC] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly'." *Tuxedo Beach Club Corp. v. City Federal Sav. Bank,* 737 F.Supp. 18, 20 (D.N.J.1990).

The issue presented to the Court, however, is what jurisdictional restrictions, if any, Congress intended to place upon federal district courts in cases commenced *prior* to insolvency of a financial institution and appointment of RTC as receiver under FIRREA.

RTC urges a reading of Section 1821(d)(13)(D) of FIRREA that would mandate exhaustion of administrative remedies as prerequisite to subject matter jurisdic-

tion in suits filed *prior* to as well as *after* appointment of receivership. RTC finds support for such reading in Section 1821(d)(6)(A) which allows a claimant three options upon exhaustion of administrative remedies, including the option *"to continue an action commenced before the appointment of the receiver."* 12 U.S.C. § 1821(d)(6) (emphasis added). RTC primarily relies on the following cases, *Tuxedo, supra; Bank of New England, N.A. v. Callahan,* 758 F.Supp. 61 (D.N.H.1991); *United Bank of Waco, N.A. v. First Republic Bank Waco, N.A.,* 758 F.Supp. 1166 (W.D.Tex.1991); and *Rexam Ltd. Partnership v. Resolution Trust Corp.,* 754 F.Supp. 245 (D.P.R.1990). *See* RTC Reply Brief at 2.

The Plaintiff, in contrast, argues that RTC's reading is in violation of canons of statutory construction and the express language of Section 1821(d)(5)(F)(ii) of FIRREA, which provides,

**No prejudice to other actions.**

Subject to paragraph (12) [4], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

The Plaintiff further argues that upon exhaustion of administrative remedies the option "to continue" a federal action commenced prior to appointment of a receiver under Section 1821(d)(6)(A) would be meaningless if such action was previously dismissed for lack of subject matter jurisdiction. In support of his position, Plaintiff relies primarily on *Marc Dev., Inc. v. Federal Deposit Ins. Corp.,* 771 F.Supp. 1163, 1165 (D. Utah 1991). The Plaintiff specifically urges this Court to disregard the cases relied upon by the RTC on the grounds that they depart from the plain

---

**3.** The administrative claims process under FIRREA can be summarized as follows. The RTC once appointed as receiver must give notice setting forth a date after which claims against it are barred. 12 U.S.C. § 1821(d)(3)(B). That bar date may not be less than 90 days after the first notice is published. *Id.* Once a claim is filed, the RTC, as receiver, is afforded 180 days to allow the claim, 12 U.S.C. § 1821(d)(5)(B), or disallow it, 12 U.S.C. § 1821(d)(5)(D). If disallowed, the claimant may either seek administrative review or file suit on such claim (or contin-

ue an action commenced before the appointment of the receiver) in a district court. 12 U.S.C. § 1821(d)(6)(A). The latter option allows the claimant a *de novo* determination of the claim, not merely a review of the administrative disallowance. 12 U.S.C. § 1821(d)(5)(E).

**4.** 12 U.S.C. § 1821(d)(12) provides for a mandatory 90–day stay of any judicial action wherein the RTC is appointed receiver.

meaning of Sections 1821(d)(5)(F)(ii) and (6)(A), and under the guise of judicial interpretation, re-legislate FIRREA.

■■■ This case presents an issue upon which district courts have clearly differed, and which apparently no circuit court has directly addressed [5]. In such a case, the basic rules of statutory construction serve as a starting point for the Court's analysis. "By any rules of statutory construction, courts are forbidden to tamper with the plain meaning of words employed unless they are clearly ambiguous or nonsensical." *Grider v. Cavazos*, 911 F.2d 1158 (5th Cir.1990). Interpretation of a statute that would render any section superfluous or inoperative is anathema to elementary principles of statutory construction. *See Texas Commerce Bank–Fort Worth, N.A. v. United States*, 896 F.2d 152, 157 (5th Cir.1990). A court, however, is not bound by the plain meaning of the statute if such would thwart the obvious purpose of the statute. *See Suburban Transit Corp. v. Interstate Commerce Com.*, 784 F.2d 1129, 1130 (D.C.Cir.1986).

The Court declines to follow the reasoning of the cases upon which the RTC relies, and considers these cases seriatim.

In *Tuxedo*, the court concluded that pre-receivership claims, like post-receivership claims, are subject to FIRREA's administrative procedures. *See* 737 F.Supp. at 19–20. The court's decision was based on an inability to reconcile the various provisions of FIRREA, namely Sections 1821(d)(5)(F)(ii) [6] and 1821(d)(6)(A); and a finding that exhaustion of administrative proceedings in that instance better served FIRREA's purpose of expeditious and fair processing of claims. *See id.* In *Tuxedo*, the receiver was appointed only a few days after the action was instituted, and the court expressly qualified its decision by

stating that "[a]n action which is further along in the judicial process would involve different considerations." *Id.* at 20 n. 1.

The court in *Callahan* relied exclusively on *Tuxedo*, and similarly allowed for a stay of the suit pending exhaustion of administrative proceedings since *no* judicial action had been taken since institution of the suit. *See* 758 F.Supp. at 64. *Callahan* found the qualification of the decision in *Tuxedo* to be both significant and controlling.

> What [*Tuxedo*] did not do, however, was hold that *all* suits filed before appointment of the receiver must be re-routed through the administrative process.

> This court finds [*Tuxedo*]'s qualifications of his decision significant. It is beyond question that a suit filed against the receiver after its appointment is subject to the administrative mandates of section 1821(d). However, it is also apparent that a claimant may face substantial prejudice if forced to suspend for up to six months a lengthy judicial pursuit of a claim against a solvent financial institution and initiate a separate administrative proceeding in a different forum after a receiver is appointed. Moreover, such a result could contradict FIRREA's goal of efficient claims resolution.

*Id.* at 64 (emphasis in original) (citations omitted).

In *Rexam*, the court relies on Section 1821(d)(6)(A) to find that exhaustion of administrative remedies was necessary to the court's subject matter jurisdiction over a suit initiated 16 days before appointment of receivership. *See* 754 F.Supp. at 246. In addition, the court proposes an interpretation of Section 1821(d)(5)(F)(ii) which completely overlooks the import of the 90 day stay under that Section. Under this interpretation, the court assures the claimants

---

5. Specifically, as regards the Fifth Circuit, the court in *Waco* similarly facing the administrative requirements for pre-receivership claims stated that,

> Since FIRREA's enactment, the Fifth Circuit has not directly addressed the administrative scheme clearly envisioned by Congress and found in Title 12 U.S.C., Section 1821(d)(5)–(14).

758 F.Supp. at 1167.

6. The court in *Tuxedo* expressly recognized that the language of Section 1821(d)(5)(F)(ii) clearly gave the claimants the right to continue their action without interruption; and that a 180 day stay would render the 90–day stay provision of Section 1821(d)(2) superfluous. *See Tuxedo* 737 F.Supp. at 19. The court did not comply with the express congressional mandate embodied in this Section, however, because of its perceived incompatibility with other sections of FIRREA.

that after exhaustion of administrative remedies, their rights to continue their federal action would not be prejudiced due to Section 1821(d)(5)(F)(ii). *See id.* at 246.

Finally, in *Waco*, pursuant to Section 1821(d)(13)(D) and (d)(6)(A), the court finds that it has no jurisdiction over counterclaims filed against the FDIC as receiver where no administrative claim had been filed with the FDIC. *See* 758 F.Supp. at 1168. In so finding, the court states,

> The fact that this case was filed before United Bank was taken over by the FDIC is not an issue. FIRREA's administrative scheme applies to pending actions. To entertain this action would permit persons holding claims against a depository institution to completely forego the administrative process described in Title 12, Section 1821(d), and thereby, the letter of the law. This would render section 1821 meaningless. Certainly, the spirit of section 1821 and Congress' intent is a system that promotes the efficient handling of claims. The Court cannot imagine any other reason for section 1821's existence.

*Id.*

The court in *Waco*, however, fails to take Section 1821(d)(5)(F)(ii) into account in its analysis; and does not address the concerns of efficiency peculiar to cases instituted prior to appointment of receivership, especially those cases long advanced in the judicial process.

Contrary to these holdings, this Court concludes that the provisions of FIRREA as embodied in Section 1821 in regard to adjudication of suits initiated prior to appointment of receivership are not inconsistent, and therefore there exists no cause to reinterpret its provisions to serve the purposes intended by Congress. The general jurisdictional limits of Section 1821(d)(13)(D) apply to all cases in which the RTC is a party as a receiver "except as otherwise provided in subsection [d]". Section 1821(d)(5)(F)(ii) provides a distinct set of rules governing cases instituted prior to receivership; and allows for the continued and uninterrupted adjudication in district courts of such cases, with the exception of a 90-day stay intended to allow the RTC to familiarize itself with the case[7]. Once a receiver is appointed, however, the claimant in the pending federal suit may additionally comply with and seek relief in the administrative claims procedures of FIRREA[8]. *See supra* page 3 n. 3. Accordingly, Section 1821(d)(6)(A) provides as one of the options available to claimants upon completion of the administrative proceedings the ability "to continue an action commenced before the appointment of the receiver."[9]

The Court adopts the reasoning in *Marc*[10] where the court stated in conclusion that,

> [Section 1821(d)(5)(F)(ii) ] provides that no prejudice befalls a litigant who also files

7. The legislative history of FIRREA makes clear that the 90-day stay under Section 1821(d)(5)(F)(ii) is intended to provide the regulatory agency a breathing space to analyze a case into which it is placed as a party upon being appointed as a receiver. *See* H.R.Rep. No. 54, 101st Cong., 1st Sess. 331, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 127.

8. Section 1821(d)(6)(A) thus contemplates a duality of remedies available to the claimant that has a lawsuit pending when RTC is appointed as receiver. As the court in *Marc* stated, "[p]ermitting a conscientious claimant, who has previously acted to preserve his or her right, to pursue both avenues of redress does not seem inconsistent with the spirit of [Section 1821(d) ]." 771 F.Supp. at 1168.

9. The court in *Marc* finds that the only reading of Section 1821(d)(6)(A) consistent with the remaining provisions of FIRREA is that,

> [t]he term "continue" implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not "continue" an action over which the court had been deprived of subject matter jurisdiction. The claimant would have to "refile" such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction.

771 F.Supp. at 1168-69.

10. The RTC faults the Plaintiff for failing to note that *Marc* has been appealed to the Tenth Circuit and more significantly for failing to address *Resolution Trust Corporation v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991) (per curiam), "in which the Tenth Circuit effectively, if not directly, disapproved *Marc*." RTC's Reply Brief at 3. While *Mustang* may be an indication of how the Tenth Circuit may be disposed on this matter, the outcome of *Marc*'s appeal must be awaited. In any event, however, the Fifth

an administrative claim with FDIC. The "no prejudice" language of paragraph (d)(5)(F)(ii) draws the distinction that permits all the provisions of subsection (d) to function together harmoniously. A lawsuit filed before the appointment of FDIC as receiver is therefore subject to different rules than a lawsuit filed after appointment. A lawsuit filed before the receivership follows an essentially normal course while the FDIC's claims processing mechanism proceeds simultaneously.

771 F.Supp. at 1168.

The plain meaning of legislation is conclusive, except in those rare cases in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The purpose of FIRREA to expeditiously and fairly dispose of the bulk of claims against failed financial institutions, however, is best served by the continued adjudication of suits instituted prior to receivership. As already discussed, administrative disallowance of a claim does not bind the claimant, and the district court makes a *de novo* review of the claim. Therefore, imposing a potentially lengthy stay for exhaustion of administrative procedures in a case commenced in August of 1988 carries a risk of substantial prejudice to parties other than the RTC. *See also Marc,* 771 F.Supp. at 1169 ("To read the jurisdiction limit as not drawing a distinction between suits filed before and after the receivership would lead to the waste of considerable legal efforts."); *Callahan,* 758 F.Supp. at 64.

In sum, since there exists no inconsistency in the relevant statutory provisions of FIRREA, the Court is expressly prohibited from departing from the clear meaning of the terms. Pursuant to Sections 1821(d)(5)(F)(ii) and (6)(A), RTC is not entitled to a stay pending exhaustion of administrative proceedings.

Circuit has not yet issued a position on adminis-

### III. *Conclusion*

For the foregoing reasons, RTC's Motion for Stay pending exhaustion of administrative proceedings is DENIED.

SO ORDERED.

trative requirements for pre-receivership suits.