[No. B070925. Second Dist., Div. Five. Mar. 4, 1994.]

NELSON L. ROBBINS et al., Plaintiffs and Appellants, v.
FOOTHILL NISSAN et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

___
*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.D.

1770

**COUNSEL**

Nelson L. Robbins and Sharon E. Robbins, in pro. per., for Plaintiffs and Appellants.

Ann S. DuRoss, Robert D. McGillicuddy, Gregory E. Gore, Jean C. Wilcox, Ford, Walker, Haggerty & Behar and Maxine J. Lebowitz for Defendants and Respondents.

## OPINION

TURNER, P. J.—

### I. INTRODUCTION

Plaintiffs, Nelson L. Robbins and Sharon E. Robbins, appeal from an order dismissing their complaint against defendants, Foothill Nissan and the Federal Deposit Insurance Corporation (FDIC), as receiver for Far Western Bank (Far Western) and Atlantic Finance Bank (Atlantic), a division of Far Western, for lack of subject matter jurisdiction. In the published portion of this opinion, we determine that federal and state courts have concurrent jurisdiction over suits which are filed prior to the appointment of the FDIC as the receiver against a banking or other savings institution which is subject to a receivership pursuant to 12 United States Code section 1821.[1]

### II. BACKGROUND

*Present State Court Actions and FDIC Administrative Proceedings*

The original complaint was filed on March 16, 1990, and named as defendants: Foothill Nissan; Far Western; Atlantic; Rafael Santiago; and A. C. Hipp.[2] Plaintiffs alleged that they were overcharged for a 1987 Nissan Sentra XE that they purchased from Foothill Nissan. The second amended complaint which is at issue in this case was filed on December 7, 1990, and asserted causes of action for conspiracy and fraud, as well as violations of the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.), the Federal Truth in Lending Act (15 U.S.C. § 1601 et seq.), and the Racketeer Influenced and Corrupt Organizations Act. (18 U.S.C. § 1961 et seq.)

On December 14, 1990, after the second amended complaint was filed, the superintendent of banks for the State of California found Far Western insolvent and took possession of its assets including Atlantic. On the same

---

[1]Unless otherwise specified, all future statutory references are to 12 United States Code section 1821 and its various subdivisions. Federal court decisions often refer to the subdivisions as subsections. We will utilize the nomenclature of California state courts and refer to the section 1821 subparts as subdivisions.

[2]Neither Mr. Santiago nor Mr. Hipp is a party to this appeal.

date, the FDIC was appointed receiver for the bank pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). (Pub.L. No. 101-73 (Aug. 9, 1989) 103 Stat. 183). FIRREA is codified in section 1811 et seq.

On January 11, 1991, the FDIC notified plaintiffs that, pursuant to FIRREA, they were required to file a written proof of claim on or before April 1, 1991. On February 15, 1991, plaintiffs filed a written proof of claim. On the same date, the FDIC sent plaintiffs a notice that the proof of claim had been received. Also, the FDIC provided an additional document informing plaintiffs the proof of claim was deficient in that it lacked their signatures, was not notarized, and was not supported by documentation. The FDIC requested plaintiffs to submit the additional documents to continue the review process. When the information was not submitted, an attorney for the FDIC wrote to plaintiffs on April 24, 1991, requesting the supplemental information. The FDIC also notified plaintiffs that it would be seeking a stay of the court action pending a final determination of their claim. The letter stated that the claim would be passed upon within 180 days of its submission to the FDIC. The FDIC letter further indicated: "Until the FDIC has determined the claim, the State Court no longer has subject matter jurisdiction over the matter. Furthermore, following the claims determination, should you be dissatisfied with the FDIC's decision, your only recourse will be to seek a de novo review in the United States District Court for the Central District of California, or to seek an administrative review through the FDIC's claim review process." Plaintiffs did not submit any additional information and the FDIC did not process the claim within the 180-day period nor did it request a stay of the present action.

On April 17, 1992, the FDIC moved to dismiss the action on the ground the state court lacked subject matter jurisdiction because the federal judiciary was vested with exclusive jurisdiction and plaintiffs failed to comply with the claims statute which therefore was a bar to any cause of action against the FDIC as receiver. The FDIC's motion was joined by Foothill Nissan and granted by the trial court. Plaintiffs' motion for new trial was denied and they filed a timely appeal from the order dismissing their action for lack of subject matter jurisdiction. (Cal. Rules Court, rules 2, 3(a).)[3]

### III. DISCUSSION

#### A. Standards of Review

The issue in this case, which we address in the published portion of the opinion, is whether the trial court properly dismissed the action based upon

---

[3]Foothill Nissan has advanced no ponderable justification for affirming the judgment of dismissal as to it. It is a car dealership and not subject to FIRREA.

lack of subject matter jurisdiction under FIRREA. The FDIC contends the trial court properly determined it lacked subject matter jurisdiction because the federal courts have exclusive jurisdiction over actions against failed federally insured depository institutions and plaintiffs failed to timely seek de novo review after their claim was denied by it.[4] ■ Because the appeal is from a dismissal for lack of subject matter jurisdiction,[5] a question of law, this court reviews the issue de novo. (*Finnie* v. *District No. 1 - Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311, 1318 [12 Cal.Rptr.2d 348]; *Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

■ Because we are applying a federal statute, we follow rules of statutory construction enunciated by the United States Supreme Court. In *Kaiser Aluminum & Chemical Corp.* v. *Bonjorno* (1990) 494 U.S. 827, 835 [108 L.Ed.2d 842, 852, 110 S.Ct. 1570], quoting from *Consumer Products Safety Comm'n* v. *GTE Sylvania* (1980) 447 U.S. 102, 108 [64 L.Ed.2d 766, 772, 100 S.Ct. 2051], the United States Supreme Court held: "The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" The United States Supreme Court has noted that ". . . the statutory language controls its construction" (*Ford Motor Credit Co.* v. *Cenance* (1981) 452 U.S. 155, 158, fn. 3 [68 L.Ed.2d 744, 749, 101 S.Ct. 2239]) and that "'[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the [L]egislature undertook to give expression to its wishes.' [Citations.]" (*Griffin* v. *Oceanic Contractors, Inc.* (1982) 458 U.S. 564, 571 [73 L.Ed.2d 973, 980-981, 102 S.Ct. 3245].) In interpreting the statute, the United States Supreme Court has noted: "'In expounding a statute, we must not be guided by a single sentence or a member of a sentence, but look to the provisions of the whole law, and to its object and policy.' [Citations.] Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will." (*Philbrook* v. *Glodgett* (1975) 421 U.S. 707, 713 [44 L.Ed.2d 525, 532-533, 95 S.Ct. 1893].) On another occasion, the court stated, "We do not, however, construe statutory phrases in isolation; we read statutes as a whole." (*United States* v. *Morton* (1984) 467 U.S. 822, 828 [81

---

[4]As noted previously, there is nothing in the record to indicate the FDIC ever denied the claim.

[5]The FDIC has not argued on appeal that plaintiffs failed to exhaust their administrative remedies. Hence, any argument in that vein has been waived. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].) We do not address that issue. The FDIC remains free to litigate that issue by means of a summary judgment motion or other appropriate procedural mechanism.

L.Ed.2d 680, 688, 104 S.Ct. 2769], fn. omitted.) Further, in interpreting a statute, the Supreme Court has emphasized the importance of avoiding "absurd results" (*United States* v. *Turkette* (1981) 452 U.S. 576, 580 [69 L.Ed.2d 246, 253, 101 S.Ct. 2524]); " 'an odd result' " (*Public Citizen* v. *Department of Justice* (1989) 491 U.S. 440, 454 [105 L.Ed.2d 377, 392, 109 S.Ct. 2558]); or "unreasonable results whenever possible." (*American Tobacco Co.* v. *Patterson* (1982) 456 U.S. 63, 71 [71 L.Ed.2d 748, 757, 102 S.Ct. 1534].) Moreover, the Supreme Court has noted, "Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided." (*Commissioner* v. *Asphalt Products Co., Inc.* (1987) 482 U.S. 117, 121 [96 L.Ed.2d 97, 102, 107 S.Ct. 2275].) In *Griffin* v. *Oceanic Contractors, Inc., supra,* 458 U.S. at page 571 [73 L.Ed.2d at page 981], the court stated: "Nevertheless, in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling. . . . [Citations.]" When a statute is unambiguous, its language cannot "be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process. [Citation.]" (*West Virginia Univ. Hospitals, Inc.* v. *Casey* (1991) 499 U.S. 83, 98-99 [113 L.Ed.2d 68, 83, 111 S.Ct. 1138].)[6]

■ Moreover, in determining whether there has been preemption of any cause of action against a failed depository institution, we are guided by the principles set forth by the California Supreme Court in *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 909-910 [221 Cal.Rptr. 575, 710 P.2d 375], for resolving the question of jurisdiction in cases involving a federal law. Quoting liberally from *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981) 453 U.S. 473, 477-484 [69 L.Ed.2d 784, 790-795, 101 S.Ct. 2870] and other sources, *Cianci* stated: " 'The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.' [Citations.] 'This rule is premised on the relation between the States and the National Government within our federal system. [Citation.] The two exercise concurrent sovereignty . . . . Federal law confers rights binding on state courts, the subject-matter jurisdiction of which is governed in the first instance by state laws.' [Citations.] Practice

---

[6]The California Supreme Court has adopted similar rules pertaining to the construction of statutes enacted by our Legislature. (*Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1164 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

has followed theory. 'Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule.' [Citation.] [¶] Accordingly, '[i]n considering the propriety of state-court jurisdiction over any particular federal claim, [a court] begin[s] with the presumption that state courts enjoy concurrent jurisdiction. [Citations.] Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.' [Citation.] Put otherwise, 'the presumption is that jurisdiction is concurrent, and some strong showing of need for exclusive jurisdiction is required to overcome that presumption.' [Citation.]" (*Cianci* v. *Superior Court, supra*, 40 Cal.3d at p. 910; accord, *Yellow Freight System, Inc.* v. *Donnelly* (1990) 494 U.S. 820, 823 [108 L.Ed.2d 834, 839, 110 S.Ct. 1566] [To give federal courts exclusive jurisdiction, "Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction."]; *Hathorn* v. *Lovorn* (1982) 457 U.S. 255, 266 [72 L.Ed.2d 824, 835, 102 S.Ct. 2421] [Citing *Gulf Offshore*, only " '. . . an explicit statutory directive, [an] unmistakable implication from legislative history, or . . . a clear incompatibility between state-court jurisdiction and federal interests' will rebut the presumption" of state court jurisdiction.].)

### B.  *The Pertinent Provisions of FIRREA*

#### 1.  *The Claims Process*

FIRREA requires the FDIC, when it is appointed as the receiver, to pay the obligations of failed depository institutions. Subdivision (d)(2)(H) provides the FDIC "as . . . receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." Subdivision (d)(3)(A) states that the FDIC may "as receiver, determine claims in accordance with this subsection and regulations provided under [subdivision (d)] (4)(A)." Once the FDIC is appointed as a receiver, it has a duty to notify the failed depository institution's creditors "on the institution's books" with a notice to file claims. (Subd. (d)(3)(B) & (C).)

FIRREA also sets forth the possible avenues of the FDIC in responding to an institution's alleged creditors' claims. To begin with, FIRREA sets a time limit for a decision by the FDIC on a claim. There is a 180-day limit. Additionally, there is a 90-day time limit for deciding whether to allow

claims, which is referred to in FIRREA as an "expedited" procedure. As will be noted later, the 90-day limit, subject to several other limitations, applies to situations where a security interest is at issue. Under the nonexpedited procedure, all claims must be determined within 180 days of the filing of the claim (subd. (d)(5)(A)(i)) unless the claimant and the FDIC agree to extend that time period. (Subd. (d)(5)(A)(ii).) As an alternative to the ·180-day claims resolution process, FIRREA also required the FDIC to establish "a procedure for expedited relief outside of the routine claims process established under" subdivision (d)(5)(A). (Subd. (d)(8)(A).) If the expedited procedure is used, within the 90 days after the claim has been filed, the FDIC must: allow or disallow the claims; require, if appropriate, the utilization of the 180-day time period; and notify the claimant of its decision and "the procedure for obtaining agency review . . . ." (Subd. (d)(8)(B)(ii).)

Regardless of whether the 180-day or 90-day procedure is used, the receiver is to allow any claim "which is proved to the satisfaction of the receiver." (Subd. (d)(5)(B).) On the other hand, the FDIC is to disallow untimely claims, subject to certain exceptions (subd. (d)(5)(C)) and any claim "which is not proved to the satisfaction of the receiver." (Subd. (d)(5)(D).) There is no judicial review of a claim which the FDIC finds "not proved to the satisfaction of the receiver" within the meaning of subdivision (d)(5)(D). (Subd. (d)(5)(E).) In other words, if the FDIC disallows the claim, that determination may not be corrected by a court. Rather, the judicial determination is made de novo as to whether the FDIC must pay money on behalf of the failed depository institution. Courts do not "review [the] administrative disallowance of the claim." (*Brady Development Company* v. *Resolution Trust Corporation* (4th Cir. 1994) 14 F.3d 998, 1003; *Bank of New England, N.A.* v. *Callahan* (D.N.H. 1991) 758 F.Supp. 61, 63; *Resolution Trust* v. *Beauchamp Constr.* (Fla.Dist.Ct.App. 1993) 615 So.2d 247, 249.)

## 2. *The Effect of the Claims Procedure on Existing Lawsuits*

In addition to describing how the FDIC is to respond to a claim by a purported creditor, FIRREA sets forth the legal effect of the filing of a claim in two respects as to both the 180-day and 90-day resolution processes. As to the normal 180-day review process, if no suit has yet been filed, the applicable statute of limitations is tolled. Subdivision (d)(5)(F)(i) states: "(i) Statute of Limitations tolled [¶] For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action." Quite obviously, in any case where suit has been filed before the FDIC is appointed as the receiver, such as the present one, the tolling of the statute of limitations is irrelevant. However, the next

provision of FIRREA addresses what happens when suit was filed before the appointment of the FDIC as a receiver. Subdivision (d)(5)(F)(ii) provides as follows in pertinent part: "(ii) No prejudice to other actions [¶] Subject to [subdivision (d)(12)], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue *any* action which was filed before the appointment of the receiver." (Italics added.)

Further, just as in the case of a denial of a claim subject to the 180-day review period, FIRREA addresses those claims subject to the 90-day time frame for allowing or disallowing the alleged creditor's request for compensation. As noted earlier, FIRREA provides for an expedited claims process in subdivision (d)(8)(A). Under the expedited process, the claim must be allowed or disallowed within 90 days or relegated to review under the 180-day procedure. (Subd. (d)(8)(B).) As in the case of the 180-day procedure, FIRREA describes the legal effect of the filing of a claim in connection with the 90-day claims resolution procedure. Subdivision (d)(8)(E)(i) states in its entirety: "Statute of limitations tolled [¶] (i) For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action." In the event that suit was filed prior to the appointment of a receiver, subdivision (d)(8)(E)(ii) provides that, subject to a stay procedure which will be discussed shortly, "[T]he filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."

Moreover, FIRREA provides for a stay of lawsuits pending at the time of the appointment of the receiver. Subdivision (d)(12) provides in pertinent part: "(12) Suspension of legal actions [¶] (A) In general [¶] After the appointment of a . . . receiver for an insured depository institution, the . . . receiver may request a stay for a period not to exceed—[¶] . . . (ii) 90 days in the case of any receiver, [¶] in any judicial action or proceeding to which the institution is or becomes a party. [¶] (B) Grant of stay by all courts required [¶] Upon receipt of a request by any . . . receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties." Both of the two explicit provisions of FIRREA which provide that the filing of a claim shall not prejudice any right of any claimant to continue any action, make it clear that these provisos are subject to the stay set forth in subdivision (d)(12). (Subds. (d)(5)(F)(ii) & (d)(8)(D)(ii).)

Failure to comply with the claims procedure bars any lawsuit filed against a failed depository institution. (*Brady Development Company, Inc.* v. *Resolution Trust Corporation*, *supra*, 14 F.3d at pp. 1005-1006; *Carney* v.

*Resolution Trust Corporation* (5th Cir. 1994) 10 F.3d 1164, 1168; *Bueford* v. *Resolution Trust Corp.* (8th Cir. 1993) 991 F.2d 481, 484; *Marquis* v. *F.D.I.C.* (1st Cir. 1992) 965 F.2d 1148, 1152; *FDIC* v. *Shain, Schaffer & Rafanello* (3d Cir. 1991) 944 F.2d 129, 133; *Rosa* v. *Resolution Trust Corp.* (3d Cir. 1991) 938 F.2d 383, 391-393.) However, once a claim has been disallowed or the 180-day or 90-day time period has passed, a creditor does have a right to continue an action commenced before the appointment of a receiver. In the case of the 180-day process, FIRREA provides for possible agency review by the FDIC or judicial determination of claims. The complex and ambiguous language of FIRREA in connection the with 180-day time period in subdivision (d)(6)(A) is as follows: "(6) Provision for agency review or judicial determination of claims [¶] (A) In general [¶] Before the end of the 60-day period beginning on the earlier of— [¶] (i) the end of the period described in paragraph (5)(A)(i) [the 180-day period during which the claim must be allowed or disallowed] with respect to any claim against a depository institution for which the Corporation is receiver; or (ii) the date of any notice of disallowance of such claim . . . , [¶] the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." As will be noted, it is this provision of FIRREA which the FDIC contends deprives state courts of jurisdiction to decide lawsuits filed prior to the appointment of the receiver.[7]

In addition to addressing the right to continue a prereceivership lawsuit in connection with the 180-day process, FIRREA addresses what is to occur under the expedited 90-day claims resolution procedure. As will be noted, the language is materially different for the 90-day procedure. Subdivision (d)(8)(C) states: "Any claimant who files a request for expedited relief shall be permitted to file a suit, or to continue a suit filed before the appointment of the receiver seeking a determination of the claimant's rights with respect to such security interest after" the expiration of the 90-day period or the date of disallowance of the claim by the FDIC. In other words, the language pertinent to the 90-day time period contains no limitation as to where the suit may be filed or continued. As noted previously, federal courts are in

[7]The FDIC has not enacted rules for administrative review of its determination to disallow claims. (12 C.F.R. §§ 300-365.2 (1993); *F.D.I.C.* v. *Hanson* (D.Minn. 1992) 799 F.Supp. 954, 958.) Nor is the FDIC required by the language of FIRREA to adopt rules for administrative review. (*Ibid.*; subd. (d)(4).) In the present case, there is no issue concerning the absence of an administrative review process nor was any request made by plaintiffs to secure administrative review of the inaction by the FDIC on their claim.

agreement that the continuance of a pending suit is dependent upon "compliance with FIRREA's claims provisions." (*Resolution Trust Corp.* v. *Mustang Partners* (10th Cir. 1991) 946 F.2d 103, 106.) If a claimant "elects to . . . continue a judicial proceeding, the court determines de novo the claim against the depository institution." (*Praxis Properties* v. *Colonial Sav. Bank* (3d Cir. 1991) 947 F.2d 49, 63.) The merits of the lawsuit are unaffected by the appointment of the receiver. (*Tosco Corp.* v. *Federal Deposit Ins. Corp.* (6th Cir. 1983) 723 F.2d 1242, 1247; accord, *McNeily* v. *U.S.* (N.D.Tex. 1992) 798 F.Supp. 395, 400.)

### C.   *California Has Concurrent Jurisdiction to Hear Plaintiffs' Lawsuit*

According to the FDIC, subdivision (d)(6)(A) acts to deprive state courts of jurisdiction over lawsuits filed prior to its appointment as a receiver. We respectfully reject the position of the FDIC. First, although not dispositive, FIRREA never explicitly provides for exclusive federal court jurisdiction. Further, FIRREA never expressly states that state courts are divested of jurisdiction. Second, we agree with the decisional authority which holds that the filing of a claim does not deprive the court of a suit filed prior to the appointment of the FDIC as a receiver. FIRREA makes reference to the right to "continue" a pending action. For example, in *Carney* v. *Resolution Trust Corp.*, *supra*, 10 F.3d at page 1168, the Fifth Circuit Court of Appeals held: "However, we agree with all circuits that have thus far addressed this issue and conclude that when claims for monetary damages are brought before the RTC is appointed receiver, a court continues to have subject matter jurisdiction over those claims. [Citations.] Several sections of FIRREA support this conclusion. For example, [subdivision] (d)(6)(A) permits a claimant 'to *continue* an action commenced before the appointment of the receiver' after the RTC has denied the claim. Additionally, [subdivision] (d)(5)(F)(ii) provides that the filing of a claim 'with the receiver shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of the receiver.' It appears clear to us that a claimant could not 'continue' an action that should have been dismissed." (Original italics.) In *Marquis* v. *F.D.I.C.*, *supra*, 965 F.2d at pages 1152-1153, when responding to an argument by the FDIC, the First Circuit Court of Appeals held: "This interpretation, however, seems inconsistent with other parts of FIRREA. The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90-day stay described elsewhere in the statute . . . 'the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver.' [Citation.] What could be more prejudicial to a claimant's right 'to continue' a pending action than the outright dismissal of

the action?" Other decisional authority is in accord that the filing of a claim does not deprive a federal court of subject matter jurisdiction over a pending case because FIRREA permits a creditor to continue a previously filed suit. (*Bueford* v. *Resolution Trust Corp.*, *supra*, 991 F.2d at p. 485; *Espinosa* v. *DeVasto* (D.Mass. 1993) 818 F.Supp. 438, 441; *Resolution Trust Corp.* v. *J.F. Associates* (N.D.N.Y. 1993) 813 F.Supp. 951, 955; *New Bank of New England, N.A.* v. *Callahan* (D.N.H. 1992) 798 F.Supp. 73, 76-77; *Solano* v. *Southeast Bank, N.A.* (S.D.Fla. 1992) 796 F.Supp. 506, 508; *Aliberti, Larochelle & Hodson* v. *First Meridian* (D.Me. 1992) 795 F.Supp. 42, 45.)

Third, Congress has explicitly provided as to both the 180-day and the expedited claims procedure that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." (Subds. (d)(5)(F)(ii) & (d)(8)(E)(ii).) To us, it would be prejudicial to: require the dismissal of a pending suit; require either a 180 or 90-day delay; and then mandate refiling in a federal court where the failed depository institution's principal place of business is located, a forum possibly in a different state, or even the District of Columbia. Such would clearly be prejudicial to a plaintiff or a person pursuing a request for affirmative relief against the FDIC. (*Marquis* v. *F.D.I.C.*, *supra*, 965 F.2d at pp. 1152-1153.)

Fourth, the existence of provisions permitting a stay of pending litigation within FIRREA are inconsistent with a state court being without jurisdiction to reach the merits of a dispute. Subdivision (d)(12)(A)(ii) provides for a 90-day stay of a proceeding "in any judicial action or proceeding to which such institution is . . . a party." If there is no jurisdiction, as the FDIC asserts, then there would be no need to stay proceedings "in any judicial action or proceeding." (*Marquis* v. *F.D.I.C.*, *supra*, 965 F.2d at p. 1153.) Moreover, the stay provisions apply to "any judicial action or proceeding" (subd. (d)(12)(A)(ii)), which would extend to state court actions.

Fifth, when the statute is read as a whole, as it must be, the confusing language in subdivision (d)(6)(A) that after the conclusion of the 180-day review process "the claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States . . ." cannot logically be read as an " 'explicit statutory directive' " (*Hathorn* v. *Lovorn*, *supra*, 457 U.S. at p. 266 [72 L.Ed.2d at p. 835]) which deprives California courts of concurrent jurisdiction over prereceivership litigation. To begin with, it is difficult to conceive how a lawsuit pending in state court can be continued, for example, in the United States District Court.

The suit would be not continued; rather, it would have to dismissed and then refiled. Congress did not choose language to that effect in subdivision (d)(6)(A). Further, the 90-day procedure does not provide for filing in any United States District Court. As we have already noted, FIRREA states in connection with the expedited claims process as follows in pertinent part: "Any claimant who files a request for expedited relief shall be permitted to file a suit, or to continue a suit filed before the appointment of the receiver, seeking a determination of the claimant's rights with respect to such security of interest after [the conclusion of the 90-day period or the date upon which the FDIC disallows the claim]." (Subd. (d)(8)(C).) In other words, the confusing language that applies to the 180-day process is not repeated in connection with the 90-day expedited procedure available in connection with a security interest. It is unreasonable to conclude that Congress intended to have exclusive federal court jurisdiction for the 180-day claims process but not for the expedited 90-day procedure. Further, as noted previously, the stay process refers to "any judicial action or proceeding . . . ." (Subd. (d)(12)(A).) To sum up, when FIRREA is construed as a whole, the other provisions pertinent to the continuation of prereceivership litigation do not vest exclusive jurisdiction in the federal courts.

Sixth, as we have alluded to indirectly previously, we now explicitly note that the ambiguously worded language of subdivision (d)(6)(A) urged by the FDIC would lead to unreasonable results. If the FDIC analysis were to prevail: pending lawsuits would be dismissed upon the filing of a claim with the person seeking relief from a failed depository institution being required to seek justice in district courts in the District of Columbia or perhaps another state; there would be concurrent jurisdiction for claims involving a security interest which were subject to the expedited 90-day process but not for the 180-day procedure; and both the government and the claimant would undergo additional expense by requiring the refiling of state court litigation. Congress never intended or contemplated for such an unreasonable state of affairs.

Seventh, the contention of the FDIC that the state courts are automatically without jurisdiction also conflicts with a well-established rule. ▮ It is the general rule that jurisdiction is determined at the time the action is filed and cannot be divested by subsequent actions or events. (*Praxis Properties, Inc.* v. *Colonial Sav. Bank, supra,* 947 F.2d at p. 63 fn. 14; *Rosa* v. *Resolution Trust Corp., supra,* 938 F.2d at p. 392, fn. 12; *Berke* v. *Resolution Trust Co.* (Minn.Ct.App. 1992) 483 N.W.2d 712, 715-716; *Resolution Trust Corp.* v. *Binford* (1992) 114 N.M. 560 [844 P.2d 810, 814-815]; see also *In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 47 [231 Cal.Rptr. 757] [generally, subject matter jurisdiction attaches at time action is filed and cannot

be divested].) The FDIC does not dispute the Los Angeles Superior Court had jurisdiction over the present litigation when it commenced.

Finally, we are in agreement with a number of courts which have concluded that there is concurrent jurisdiction when the litigation was commenced prior to the appointment of the FDIC as the receiver. (*Armstrong* v. *Resolution Trust Corp.* (1993) 157 Ill.2d 49 [623 N.E.2d 291, 296-297]; *Berke* v. *Resolution Trust Corp., supra*, 483 N.W.2d at p. 714; *F.D.I.C.* v. *Warmann* (Mo.Ct.App. 1993) 859 S.W.2d 948, 950-951; *Resolution Trust Corp.* v. *Binford, supra*, 844 P.2d at pp. 814-817; *Herbst* v. *Resolution Trust Corp.* (1993) 66 Ohio St.3d 8 [607 N.E.2d 440, 443-445].) We further conclude that the out-of-state cases cited by the FDIC are unpersuasive. The authority cited by the FDIC includes: *FDIC* v. *Fleet Credit Corp.* (Fla.Dist.Ct.App. 1993) 616 So.2d 488, 489; *State, Dept. of Ins.* v. *F.D.I.C.* (Fla.Dist.Ct.App. 1992) 610 So.2d 695, 696; *Resolution Trust* v. *Shoreview Builders* (1991) 252 N.J.Super. 408 [599 A.2d 1291, 1294-1297]; and *Broken Arrow Sav.* v. *Sublett* (Okla.Ct.App. 1993) 849 P.2d 1103, 1105-1106. They are not persuasive in that they do not even address the *Gulf Offshore* factors or the various inconsistencies of construing FIRREA to automatically divest a court of jurisdiction in cases where an action is pending at the time the receiver is appointed. Accordingly, none of the authorities cited by the FDIC supports its claim that Congress expressly granted exclusive jurisdiction to federal courts. In short, the FDIC did not establish that the FIRREA contains "an explicit statutory directive" granting exclusive jurisdiction to the federal courts over a state proceeding which was pending at the time the receiver was appointed. (*Gulf Offshore Co.* v. *Mobil Oil Corp., supra*, 453 U.S. at p. 478 [69 L.Ed.2d at p. 791].)

The FDIC contends that even if the statutory language does not expressly provide that federal courts have exclusive jurisdiction, the legislative history which refers only to federal courts and makes no reference to state courts establishes a clear legislative intent to divest state courts of jurisdiction. We have examined the legislative history of FIRREA and do not find "an unmistakable implication" (*Gulf Offshore Co.* v. *Mobil Oil Corp., supra*, 453 U.S. at p. 478 [69 L.Ed.2d at p. 791]) that Congress intended to deprive state courts of jurisdiction over actions filed before the receivership. Moreover, there is nothing in the published legislative history cited by the parties to show Congress ever expressly considered the question of exclusive jurisdiction. Instead, the legislative history of FIRREA indicates it was enacted to remedy the problems Congress perceived in the savings

and loan industry. (1989 U.S. Code Cong. & Admin. News, at pp. 86-506.)[8] As part of the act, Congress created a new claims determination procedure

[8]House Report No. 101-54(I), 101st Congress, 1st Session (1989), reprinted in 1989 United States Code Congressional and Administrative News, at pages 214-215, states in relevant part: "After exhaustion of streamlined administrative procedures, a claimant has a choice to either bring the claim de novo in the District Court in which the insured institution had its principal place of business or have the claim determination reviewed by one or more administrative processes. The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period. A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice. Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC. [¶] This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns with the FLSIC's current claims adjudication process as outlined by the Supreme Court in *Coit Independence Joint Venture* v. *FSLIC* (March 21, 1989) [489 U.S. 561 (103 L.Ed.2d 602, 109 S.Ct. 1361)]. In that case, the Supreme Court held that the FSLIC did not have the statutory authority to adjudicate certain State law claims against failed savings and loan associations. In addition, the Court noted that 'serious constitutional difficulties' would be presented by the FSLIC's claims process even it were authorized by statute, because granting even administrative judges the exclusive authority, with only limited judicial review, to adjudicate certain categories of State law claims under these circumstances may invade the domain reserved for Article III courts provided by the U.S. Constitution. Justice O'Connor in that opinion noted, how ever, that exhaustion could be required if an administrative procedure with clear time limits were established. The Committee believes it has provided a clear set of guidelines for claimants and for the FDIC with reasonable and specific time limits. [¶] The claims determination procedures established by Section 212(5), section 11(1) of the FDIC Act as amended, are consistent with the reasoning and concerns expressed in the *Coit* case. First, exhaustion is a proper prerequisite to further action by a claimant, since clear time limits are established for administrative review of claims. Second, a claimant will (after administrative exhaustion) have the option of presenting its claim in District Court de novo, or consenting to one of the administrative review processes administered by or acceptable to the FDIC. In the former case, Article III courts will hear the case de novo; in the latter, if a claimant appeals an administrative review, limited judicial review is constitutionally permissible because the decision to use the administrative system is voluntary. . . . [¶] The claims determination procedure set forth in subsection (1) creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to large number of claims being resolved without resort to further procedures. In addition, the administrative procedures, including review procedures, created by the FDIC, if made sufficiently attractive to claimants, should lead to a large number of claimants agreeing to present their claims through these forums rather than in court. Thus, the claim resolution process established in this section should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts. [¶] There shall be no judicial review of the administrative determination not to allow a claim. *Rather, the claimant must file suit or continue a previously filed suit to establish a disallowed claim.* The claimant and the FDIC, however, may choose an administrative review." (Italics added.) As can be noted, there was no direct discussion of what was to occur if there was a lawsuit pending in state court prior to a takeover of a depository institution. However, the report does note, "Rather the claimant must file suit or continue a previously disallowed claim." Further,

(subd. (d)(3)) to require creditors of failed depository institutions to first present their claims to the receiver before pursuing judicial remedies. According to the legislative history, the purpose of the claims procedure was to enable the FDIC "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly" (H.R.Rep. No. 54(I), 101st Cong., 1st Sess. (1989) reprinted in 1989 U.S. Code Cong. & Admin. News at pp. 214-215.)[9] The claims procedure was established in part to address concerns in the existing system which were raised by the United States Supreme Court in *Coit Independence Joint Venture* v. *FSLIC* (1989) 489 U.S. 561, 586-587 [103 L.Ed.2d 602, 623-624, 109 S.Ct. 1361]. *Coit* held the Federal Savings and Loan Insurance Corporation (FSLIC) did not have exclusive jurisdiction, under prior statutes governing it, to adjudicate creditors' claims against failed depository institutions and did not divest the courts of jurisdiction to hear claims de novo. (*Id.* at p. 587 [103 L.Ed.2d at pp. 623-624].) *Coit* noted there was no "clear and reasonable time limit" on when the FSLIC was to act on a creditor's claim. (*Id.* at p. 586 [103 L.Ed.2d at p. 623].) As a result, the United States Supreme Court held that the "lack of a reasonable time limit in the [then] current administrative claims procedure" rendered it so inadequate, a claimant could bypass it altogether and file suit without seeking review before the FSLIC. (*Id.* at pp. 586-587 [103 L.Ed.2d at p. 623].) Thus, the legislative history shows that FIRREA was enacted because of the crisis in savings and loan institutions and the new claims procedure was enacted in part to address the concerns raised in *Coit*. Congress's enactment of FIRREA in response to the problems in the savings and loan industry and the establishment of a claims procedure in response to *Coit* is not the equivalent of an expression of intent to grant federal courts exclusive jurisdiction over all claims against the receiver.

one thing the House report never says directly or inferentially—state courts have no jurisdiction to consider lawsuits filed prior to a takeover when there has been full compliance with the administrative claims process.

[9]The purposes of FIRREA are as follows: "(1) To promote, through regulatory reform, a safe and stable system of affordable housing finance. [¶] (2) To improve the supervision of savings associations by strengthening capital, accounting and other supervisory standards. [¶] (3) To curtail investments and other activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds. [¶] (4) To promote the independence of the Federal Deposit Insurance Corporation from the institutions the deposits of which it insures, by providing an independent board of directors, adequate funding, and appropriate powers. [¶] (5) To put the Federal deposit insurance funds on a sound financial footing. [¶] (6) To establish an Office of Thrift Supervision in the Department of the Treasury, under the general oversight of the Secretary of the Treasury. [¶] (7) To establish a new corporation, to be known as the Resolution Trust Corporation, to contain, manage, and resolve failed savings associations. [¶] (8) To provide funds from public and private sources to deal expeditiously with failed depository institutions. [¶] (9) To strengthen the enforcement powers of Federal regulators of depository institutions. [¶] (10) To strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors." (Pub.L. No. 101-73 (1989), § 101, 103 Stat. 183, 187.)

Further, as noted previously, the position of the FDIC that state courts have no power over existing suits against failed depository institutions conflicts with the well established rule that jurisdiction is determined at the time suit is commenced. (*Praxis Properties, Inc.* v. *Colonial Sav. Bank*, *supra*, 947 F.2d at p. 63, fn. 14.) Although we recognize that Congress could have overruled this general principle, there is nothing in the statutes or their legislative history to indicate that by enacting FIRREA, Congress intended to overrule the " 'firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint . . . .' [Citation.]" (*Ibid.*)

Finally, we are also not persuaded by the argument of the FDIC that "allowing multiple state courts to hear and decide claims that have been disallowed by the receiver is incompatible with significant federal interests" so that the third factor of the *Gulf Offshore* analysis has been established. We agree with *Armstrong* v. *Resolution Trust Corp.*, *supra*, 623 N.E.2d at page 297 that: "There is no inherent detriment or prejudice to the [receiver] in litigating in State court. [It is difficult] to see how it would be more efficient and economical to blindly strip the State court of jurisdiction after potentially lengthy pretrial and trial proceedings have already occurred. That Congress did not intend for the State courts to immediately lose jurisdiction over pre-receivership cases is evidenced in its grant to the [receiver] the ability to remove claims cases from State to Federal court. [Citation.] This provision leaves the decision up to the [receiver] as to whether it wishes to litigate pre-receivership cases in Federal court or in State court. Undoubtedly, Congress left this option open just for those cases that have proceeded so far in State court that it would be a waste of the litigants' and the judiciary's resources to start over in Federal court." In summary, we conclude FDIC did not rebut the presumption that California courts have concurrent jurisdiction over plaintiffs' claims. (*Gulf Offshore Co.* v. *Mobile Oil Corp.*, *supra*, 453 U.S. at p. 478 [69 L.Ed.2d at p. 791]; *Cianci* v. *Superior Court*, *supra*, 40 Cal.3d at p. 910.)

D. *Plaintiffs Were Not Required to File a Motion to Continue**

. . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The order dismissing the action for lack of subject matter jurisdiction is reversed. Plaintiffs, Nelson L. Robbins and Sharon E. Robbins, are to

---

*See footnote, *ante*, page 1769.

separately recover their costs on appeal from defendant, Foothill Nissan only. In all other respects, the parties are to bear their own costs on appeal.

Grignon, J., and Armstrong, J., concurred.